César **TORRES TORRES,** Plaintiff,

v.

Rafael **HERNÁNDEZ COLÓN,** et al., Defendants.

**Civ. No. 86–1411(RLA).**

United States District Court, D. Puerto Rico.

March 6, 1987.

Victor M. Casal, José F. Quetglas, Roberto De Jesús Cintrón, Río Piedras, P.R., for plaintiff.

Pedro Juan Pérez Nieves, Saldaña, Rey, Moran & Alvarado, Santurce, P.R., José Luis González Castañer, Juan Lorenzo Rodríguez Quesada, Ramírez & Ramírez, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

The present case is a civil rights action for declaratory and injunctive relief based on 42 U.S.C. § 1983. No damages are sought in the complaint. The jurisdiction of the Court is premised upon 28 U.S.C. §§ 1343, 2201, and 2202.

## I. INTRODUCTION

Plaintiff, César Torres, alleges that the defendants[1] unconstitutionally deprived him of liberty and property interests without due process of law by suspending him from his job as mayor of the municipality of Juncos and providing him with an inadequate post-suspension hearing which is still in progress.[2]

Plaintiff, the mayor of the municipality of Juncos for 10 years, claims that codefendant Hernández Colón, the Governor of Puerto Rico, summarily suspended him without pay from his elected position on April 6, 1986 solely because of partisan politics.[3] The Governor denies this and claims that his conduct was based on several official investigations which found probable cause against the Mayor for alleged violations of municipal law, including the misapplication of public funds. Further, that he properly exercised the authority vested in him by the Municipal Organic Act (the Act) when he charged plaintiff with these violations of law and simultaneously suspended him. Lastly, that the summary suspension of plaintiff, which is also authorized by the Act, was necessary because of the nature of the violations charged.

Plaintiff also complains that the special administrative commission, "Comisión Para Ventilar Querellas Municipales" (the Commission), appointed by the Governor and currently hearing the issue of his suspension is incompetent because its members, who are named defendants in this case, have political and pecuniary interests in the outcome of the proceedings.[4]

We are asked by plaintiff to declare his suspension by the Governor constitutionally invalid; to enjoin the Commission from further deliberations; and to reinstate plaintiff to the mayoralty of Juncos.

Defendants, on the other hand, move us to abstain from interfering with the ongoing state proceedings pursuant to the *Younger* doctrine and to dismiss the complaint. *Younger v. Harris*, 401 U.S. 37, 41–45, 91 S.Ct. 746, 749–51, 27 L.Ed.2d 669 (1971).

For the reasons stated below, we will grant defendants' request and abstain from exercising jurisdiction in the case at bar.

## II. PROCEDURAL BACKGROUND

The complaint in the instant case was filed on September 3, 1986 and was assigned to District Judge Carmen Consuelo Cerezo. A Temporary Restraining Order was requested. The Court denied the request on September 4, 1986 and set a preliminary injunction hearing for November 3, 1986.

On September 29, 1986, defendants filed motions for abstention and dismissal of the instant case pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. On October 7, 1986, Judge Cerezo denied defendants' motion "subject to reconsideration after the hearing on the request for preliminary injunction".

---

1. There are no facts or allegations mentioned in the complaint to implicate defendant Héctor Rivera Cruz. The complaint only states that Mr. Rivera Cruz is the Secretary of Justice. Nonetheless, we need not rule on this particular pleading deficiency given our disposition of the entire complaint.

2. The Court denied plaintiff's request to stay the administrative proceedings at the hearing held on December 17, 1986.

3. Plaintiff is a member of the New Progressive Party whereas the Governor belongs to the Popular Democratic Party. One of the fundamental differences between the two parties is that the New Progressive Party seeks statehood and the Popular Democratic Party prefers autonomy under a commonwealth status.

4. The Commission was originally composed of Ramón Negrón Soto, Manuel E. Andreu García and A.J. Amadeo Murga. Andreu García resigned and the Commission is currently proceeding with the remaining two members.

On October 31, 1986, the present case was transferred to the undersigned for handling because Judge Cerezo was presiding over a complicated and lengthy criminal trial. By Order of the Court, the hearing was postponed until November 25, 1986 due to a calendar conflict. The hearing was again continued until December at the request of defendants' attorneys.[5]

On December 15 and 17, 1986, the preliminary injunction hearing was held.

At the conclusion of the hearing, the Court granted defendants' motion to dismiss the complaint against codefendant Manuel Andreu because he had resigned from the Commission[6]. The Court also ordered the parties to file post-hearing briefs.

On January 21, 1987, codefendants Negrón Soto and Amadeo Murga filed their joint post-hearing memorandum of law whereby they reinstated their motion to dismiss the complaint on the grounds of abstention. On this same date Governor Hernández Colón and Secretary of Justice Rivera Cruz filed a similar brief.

On January 22, 1987, plaintiffs filed their brief in support of a preliminary injunction.

On February 2, 1987, defendants Hernández Colón and Rivera Cruz filed their reply to plaintiff's memorandum of law.

Finally, on February 6, 1987, plaintiff filed a response to defendants' reply.

### III.  FACTUAL BACKGROUND

On February 22, 1983, the House of Representatives of Puerto Rico approved Resolution No. 647, creating a special commission to investigate governmental corruption. The Special Commission was charged primarily with investigating the central government, public corporations, and municipalities of Puerto Rico. Several municipalities and their mayors were investigated. The targeted mayors represented both the New Progressive Party (NPP) and the Popular Democratic Party (PDP).

Upon recommendation of the Special Commission, the House passed Resolution No. 940 on May 9, 1984, authorizing a full investigation into allegations that the Municipality of Juncos misapplied federal, state, and municipal funds. Public hearings were held in which plaintiff and other municipal employees participated. The Special Commission found probable cause against plaintiff, Mr. Torres, and one of his former employees, Rafael Corsino, for violations of both state and federal law. The main evidence against plaintiff was the testimony of Mr. Corsino which involved the alleged misuse of public funds during the years 1981 and 1982.

A federal Grand Jury investigated the Special Commission's report and found probable cause against Mr. Corsino but not against the Mayor. Thereafter, Mr. Corsino was convicted of several felonies involving fraudulent misuse of federal funds[7].

During the same period, the Comptroller of Puerto Rico made his own inquiry into the Juncos affair and on March 28, 1984 wrote a letter to the Secretary of Justice of Puerto Rico strongly recommending that the Department investigate further the purported violations of state and municipal law.

Acting upon this recommendation, the Secretary of Justice, an appearing codefendant in this case, launched a new investigation and subsequently recommended to the Governor of Puerto Rico that plaintiff be formally charged with violations of municipal law.

On April 4, 1986, the Governor, acting under authority of Puerto Rico Law, 21 L.P.R.A. § 3005, summarily suspended Mr. Torres and charged him with several violations of the Municipal Organic Act of Puerto Rico, including misuse of public funds, abandonment, inexcusable neglect, and damaging the best interests of the public in

---

5.  An amended complaint was tendered on November 7, 1986 but subsequently rejected by the Court at the December preliminary injunction hearing.

6.  Partial judgment was entered on January 21, 1987.

7.  *See U.S. v. Corsino,* 812 F.2d 26 (1st Cir.1987).

the performance of his duties. Although plaintiff was not officially indicted for violations of the Puerto Rico Penal Code, the complaint the Governor filed before the administrative Commission nonetheless made reference to several criminal violations. Six of the nine municipal law charges were related to plaintiff's alleged illegal use of public funds during 1981 and 1982; but events as recent as 1984 were mentioned in two other charges.

As required by Puerto Rico Law, 21 L.P. R.A. § 3005, the charges against plaintiff were filed before the Commission which is authorized by law to resolve complaints filed against any mayor of Puerto Rico who is accused of violating municipal laws. 21 L.P.R.A. § 3101.

On April 29, 1986, the Commission ordered the parties, through their respective counsel, to meet immediately and review the Government's evidence. Plaintiff did not attend but on April 15, 1986 sought an extension to answer the complaint. An extension was granted and the answer was filed on May 16, 1986.

At a status conference on May 21, 1986, the post-suspension hearing was scheduled for October 15, 1986; the late date was requested by plaintiff's attorneys who said they had trial commitments for August and September. At that conference, plaintiff questioned for the first time the impartiality of the Commission. In response, the Commission gave plaintiff until May 28, 1986 to file a motion for their disqualification as provided by Municipal Law, 21 L.P. R.A. § 3106.

However, no motion for disqualification was filed and on June 6, 1986, the Commission, noting that a request for recusal based upon conflict of interests is an "extremely delicate issue", *sua sponte* gave plaintiff an extension until June 20, 1986 to submit his arguments and evidence in support of his bias claim. Plaintiff never filed the motion for disqualification. Instead,

during the first administrative hearing on October 15, 1986 plaintiff sought to prove the Commissioners' bias by having them take an oath, sit on the witness chair and be examined by plaintiff's attorneys. The Commission declined to do that. The commissioners nonetheless stated on the record the extent of their professional relationship with the government and ruled that it did not merit recusal. Finally, rather than pursue his rights under municipal law, particularly regarding the disqualification of the Commission, plaintiff brought the instant federal suit on September 3, 1986; five months after the state administrative proceedings were initiated.

## IV. ARGUMENTS

### *Preliminary Issues*

There is no need for us to entertain the merits of plaintiff's preliminary injunction request until we first consider whether the *Younger* abstention factors are present. Should we find these factors evident in the case at bar, plaintiff will have an opportunity to fully and fairly raise his other constitutional claims in the state administrative and, if necessary, state judicial proceedings. Consequently, plaintiff's allegation that his summary suspension violated his constitutional right to due process because it was not justified by any risk of harm to the municipality is a question the state courts can properly decide as they have done in the past[8]. *See Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982).

■ Before we can consider whether *Younger* applies, we must determine whether the Governor acted in such a flagrantly illegal fashion that he *per se* violated a fundamental constitutional right; that is, whether he acted with such obvious bad faith that he grossly violated plaintiff's rights to the point that plaintiff will suffer great and immediate irreparable harm by

---

**8.** The state tribunals are also competent to deal with plaintiff's claim that his summary suspension placed a stigma on him which deprived him of liberty interests. Plaintiff claims his ability to find other employment was affected by his suspension. However, no convincing evidence was produced to support any claim of economic hardship on plaintiff. In fact, there was evidence at the hearing that plaintiff is receiving financial support from a group of Juncos citizens as well as from other NPP members. Also, the Mayor's wife is a wage earner.

any further state proceedings based on the Governor's charges. On the evidence in the record, we cannot as a preliminary matter categorically state that the Governor violated plaintiff's due process rights since there were official investigations, both at the legislative and executive levels, as well as legislative authority sufficient to initially justify the Governor's conduct. In addition, the constitutionality of the summary suspension provision of the Act has been upheld by the Puerto Rico Supreme Court. *Id.*

This is not, however, intended in any way to prejudge the merits of plaintiff's case; rather, it is meant simply to put to rest, for purposes of this Opinion and Order, plaintiff's challenges to the Governor's actions and to the statutory scheme he employed. Again, these claims are important, but they should not influence our determinations regarding abstention. Thus, if the state provides an adequate, unbiased forum and plaintiff is entitled to full judicial review of the administrative proceedings; then there are no exceptional circumstances where plaintiff's federally created rights will be irreparably injured. *See Ohio Civil Rights Com'n v. Dayton Christian Schools,* — U.S. —, —, 106 S.Ct. 2718, 2724, 91 L.Ed.2d 512, 522–523 (1986) (no matter how plaintiff's constitutional claim should be decided on the merits, "... the Commission violates no constitutional rights by merely investigating the circumstances of /his/ discharge in this case, if only to ascertain /the/ reason in fact for the discharge.")

### Abstention Criteria

■ The *Younger* abstention is a doctrine of equitable restraint based upon comity and respect for federalism and dual sovereignty. It requires federal courts to not exercise jurisdiction over pending state proceedings, except when the federal plaintiff would be precluded from a fair adjudication of his federal claims. *See also Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), where the *Younger* doctrine was made applicable to quasi-judicial state administrative proceedings.

We must begin our foray into the question of abstention by defining whether the administrative proceedings at issue here fall under the *Younger* ambit insofar as they are *judicial* in nature and involve important *state interests.* The linch pin in the *Younger* doctrine, that is, the constitutional *adequacy* of the state proceedings, will be the final step of our analysis.

The question of abstention is especially controlling in suits for injunctive and declaratory relief which, unlike suits which seek only monetary relief, are highly intrusive into legitimate state functions. Unnecessary federal judicial interference with state administration is the rationale for the formidable federalism doctrines developed since *Younger* which preclude federal injunctions of particular kinds of pending state proceedings. Accordingly, we proceed to evaluate whether the proceedings before the Commission contain the *Younger* factors commanding our abstention.

### A. Judicial Nature of the Commission Proceedings

■ The Commission has the statutory authority to determine whether a suspended mayor should be reinstated or dismissed. A mayor may be dismissed for felony convictions, misdemeanor convictions involving moral turpitude, immoral conduct or illegal acts that imply abandonment, inexcusable negligence or conduct damaging to the best public interest in the performance of public functions. 21 L.P.R.A. §§ 3004 and 3102.

The Commission is empowered to hold hearings, receive evidence, compel the appearance of witnesses or the production of documents through subpoenas and issue decisions exonerating the mayor, dismissing him, or issuing a warning. 21 L.P.R.A. §§ 3102 and 3103. The mayor is entitled to fully confront the charges and the evidence against him, present evidence of his own and be represented by counsel. *Id.* These procedures are required to be prompt and expeditious. Full judicial review, including that of the legal sufficiency of the evidence, is available.

In sum, the capacity and make-up of the Commission and its coercive nature are

such that it can be classified as quasi-judicial.

### B. *Significant State Interest*

█ We also find that the Commission is conducting a proceeding which involves important state interests.

The importance of a state wanting to protect its citizenry from governmental misconduct cannot be overstated. Equally important is the state's interest in eliminating corrupt, incapable, or untrustworthy officials from all levels of government as well as vindicating those officials who stand falsely accused. The language of the Municipal Organic Act and the case law interpreting it reflect these important state goals. *See, e.g., Vélez Ramírez v. Romero Barceló, supra,* and *Robledo, Mayor v. C.S.M.C.,* 95 P.R.R. 1 (1967).

Therefore, the state interests sought to be vindicated by the proceedings before the Commission are sufficiently important to merit our scrupulous reluctance to intervene at this juncture except for the most extraordinary and compelling reasons, if any.

### C. *Adequacy of State Proceedings*

We have determined that the ongoing administrative proceedings we are currently asked to enjoin are quasi-judicial and involve an important state interest. Now, we must determine if plaintiff will receive an adequate opportunity to raise his constitutional claims should the state proceedings go forward. *Ohio Civil Rights Com'n, supra,* —— U.S. at ——, 106 S.Ct. at 2724.

#### 1. *State Judicial Review*

The Commission, being as it is an administrative and not a judicial forum, cannot adjudicate plaintiff's constitutional claims, such as whether the Governor's summary suspension denied plaintiff due process of law. Plaintiff nonetheless does have the right to full judicial review by state tribunals and these are entirely competent to adjudicate his federal claims. *See, e.g., Vélez Ramírez, supra. See also* 21 L.P. R.A. § 3105. Additionally, the Puerto Rico doctrine of judicial review of administrative proceedings, as we have stated, entitles a party to full review of the legal sufficiency of the evidence. *Robledo, Mayor, supra.*

We are aware that the state legislative scheme forces plaintiff to proceed with the administrative hearing before he can fully argue his constitutional claims, and that federal judicial doctrine holds that litigants need not exhaust their administrative remedies prior to bringing a section 1983 suit in federal court. *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, the Supreme Court has held that the application of the *Younger* principles to pending state administrative proceedings is fully consistent with *Patsy, supra,* where "... the administrative proceedings ... are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest." *Ohio Civil Rights Com'n, supra,* —— U.S. at ——, 106 S.Ct. at 2723, n. 2, 91 L.Ed.2d at 522, n. 7b.

The *Ohio Civil Rights Com'n* elements are present here, thus we find that the non-exhaustion principle applied in section 1983 actions does not preclude the Court from considering the *Younger* abstention doctrine in the present case. *See also Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). (Federal courts should refrain from enjoining state lawyer disciplinary proceedings if these are within the appellate jurisdiction of the appropriate State Supreme Court.)

In addition, even though plaintiff complains that the Commission's mere exercise of jurisdiction over him is unconstitutional, the Supreme Court has "... repeatedly rejected the argument that a constitutional attack on state procedures themselves 'automatically vitiates the adequacy of these procedures for purposes of the *Younger-Huffman* line of cases'." *Id.* at 522 (quoting *Moore v. Sims,* 442 U.S. 415, 427, n. 10, 99 S.Ct. 2371, 2379, n. 10, 60 L.Ed.2d 994 (1979)). In other words, neither the investigation of certain charges, nor the conduct of a hearing on those charges is necessarily violative of any of plaintiff's constitutional rights.

### 2. *Competence of the Commission*

■ Plaintiff generally concedes that the *Younger* doctrine usually forecloses federal injunctions of pending state quasi-judicial administrative proceedings. In fact, the Supreme Court has often admonished that injunctions of the type requested here should not be. issued except for the "very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury." *Ohio Civil Rights Com'n, supra,* —— U.S. at ——, 106 S.Ct. at 2723, 91 L.Ed.2d at 520. Stated another way, concerns for comity and federalism have convinced the Supreme Court that the "*normal* thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Younger, supra* at 45, 91 S.Ct. at 751 (emphasis in original).

Although plaintiff accepts this interpretation of *Younger,* he nonetheless argues that it does not apply to the case at bar because, according to him, the Commission members are biased and must be disqualified. Otherwise he will not receive constitutional due process law. However, this due process claim by itself is not sufficient to overcome *Younger.* "Certainly, only in the most extreme of cases would disqualification on /the basis of Due Process Clause/ be constitutionally required...." *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. ——, ——, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823, 832. ("Not '/a/ll questions of judicial qualification ... involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion'." Quoting *Tumey v. Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927)). Therefore, we must analyze the circumstances of this case to determine whether it falls under the "most extreme of cases" category espoused in *Aetna.*

Plaintiff's allegations of bias against the Commission are succinctly that both members have a pecuniary interest in the outcome of the case insofar as one of them, codefendant Negrón Soto, is associated with a law firm that does business for the Government and the other, codefendant Amadeo Murga, shares offices with a person whose wife works for the Governor. Further, that they also have a personal bias against plaintiff insofar as both Negrón Soto and Amadeo Murga are members of the PDP, were appointed to the Commission because of their political affinity to this political party which is currently governing Puerto Rico and that this political affiliation is *per se* antagonistic to plaintiff who is a well known member of the rival NPP.

Plaintiff relies heavily on *Gibson v. Berryhill,* 411 U.S. 564, 576–577, 93 S.Ct. 1689, 1696–1697, 36 L.Ed.2d 488 (1973), to argue that these elements of alleged bias are sufficient to overcome the *Younger* doctrine.

In *Gibson,* a group of optometrists working as a commercial partnership challenged a state legislative scheme which authorized the Alabama Board of Optometry, composed solely of members of an association of self-employed optometrists who stood in direct competition with plaintiffs, to grant and revoke state licenses for the practice of optometry. Given this institutionalized bias, the Supreme Court held that the Federal District Court did not have to abstain from entertaining the injunction against the Board sought by plaintiffs. The Supreme Court stated that those with "substantial pecuniary interest in legal proceedings should not adjudicate those disputes." *Id.* at 579, 93 S.Ct. at 1698.

Similarly, in the recent case of *Aetna, supra,* the Supreme Court reiterated the *Gibson* rationale in holding that due process required the disqualification of a state supreme court justice from participating in a decision involving an action against an insurer for bad faith refusal to pay a claim, where the justice had filed similar actions against insurers.

Both *Gibson* and *Aetna* were resolved based on the *Tumey, supra,* holding that "... it certainly violates the 14th Amendment ... to subject /a person's/ liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a

conclusion against him in his case." 273 U.S. at 523, 47 S.Ct. at 441.

In the present case, however, we find no such "direct, personal, substantial, pecuniary interest" on the part of the Commission members in conducting the proceedings investigating plaintiff's suspension.

At the hearing before this Court, plaintiff was unable to present any convincing evidence to prove that Messrs. Negrón Soto and Amadeo Murga were so tainted by pecuniary and political interests in his case that they were in fact violating his rights to due process of law.

The evidence of pecuniary interest against Negrón Soto was that the law firm in which he has been a participating partner for several years had two long standing contracts with two public corporations: the Communications Authority and the Housing Development Bank. Negrón Soto testified he had very limited involvement with these accounts. Further, that he has done some legal work, again through his firm, for the Puerto Rico Industrial, Medical and Environmental Pollution Facilities Authority and the Municipality of Dorado. However, all these contracts represented less than 3% of the entire business of the firm. Negrón Soto did not receive any direct income from these contracts, but rather his salary was derived from the total income of the office. The evidence also showed that Negrón Soto's firm has several current private accounts which require litigation against the present Government and that the firm generally discourages government accounts.

Regarding Amadeo Murga, the only evidence presented of pecuniary interest, if any, was that he shares office space and equipment but no professional relationship with the husband of an aide to the Governor. Amadeo Murga, like Negrón Soto, testified to the numerous cases he personally litigates against the present Government. Some of Amadeo Murga's clients, interestingly, are members of the NPP who are suing the present government for patronage dismissal due to partisan politics.

We find that this evidence falls quite short of the "direct and substantial" pecuniary interest test for recusal. We fail to see how these attenuated business contacts represent direct economic competition against plaintiff or a substantial pecuniary interest of the type envisioned in the *Gibson—Aetna* line of cases. The inference plaintiff would have us make is that the defendants on the Commission want to rule against plaintiff in order to gain the graces of the Governor in the form of government contracts for legal services. Given the evidence presented in this suit, these are but amorphous speculations which cannot rise to the level of a "serious question of personal financial stake ...", *Gibson* at 571, 93 S.Ct. 1694, on the part of Negrón Soto or Amadeo Murga.

Finally, plaintiff's allegations of Negrón Soto and Amadeo Murga's political bias are even more tenuous than those concerning the alleged pecuniary interests. The only evidence of this so-called political bias is that both Negrón Soto and Amadeo Murga are personally acquainted with the Governor and voted for him in the 1984 elections. Moreover, that Negrón Soto occasionally attended social activities hosted by Popular Democratic Party candidates, but only before he was appointed to the Commission. In addition, Amadeo Murga testified that he is a nonpaid member of a voluntary citizens group which advises the President of the Senate, a Popular Democratic Party member, on matters of public security [9].

Lastly, plaintiff complains that appointments to the Commission are made on the basis of political affiliation. This contention is somewhat frivolous since it is widely recognized that political affiliation is generally an important consideration for most appointments of this nature, including judgeships. In fact, plaintiff's own witness, former Governor Romero Barceló, testified that his appointments to the Commission during his tenure were all on the

---

**9.** Along these cross-political lines we also note that the acting mayor of Juncos is a member of the NPP just like plaintiff. We fail to see what the PDP stands to gain by suspending an NPP member who has been substituted by another NPP member.

basis of political affiliation. Clearly, this factor cannot be a serious challenge to the impartiality of the Commission since to accept plaintiff's premise would be to undermine all administrative and judicial proceedings.

As for the other factors of alleged political bias we feel plaintiff has failed at his burden of overcoming the presumption that "administrators are men of conscience and objective." *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Here, that presumption is further buttressed in the case of Negrón Soto by the fact that he was a judge in the Superior Court of Puerto Rico for over 19 years; a background that we can reasonably infer developed in him a keen sense of objectivity and should have also fomented impartiality, the cardinal rule for all judges[10].

The Court notes that Amadeo Murga is a well respected attorney in this District with extensive legal experience which includes various scholarly pursuits.

Plaintiff was unable to prove that either Negrón Soto or Amadeo Murga were so immersed in political activity that their political philosophies would overcome their good judgment to the point that they would deny plaintiff his due process rights simply because of his different political afinity.

We also note with interest that in the *Gibson* case, on which plaintiff relies, the Supreme Court did not consider the plaintiff's allegations of personal interest and prejudgment of the facts. Moreover, in *Aetna*, the majority, as we noted above, minimized the importance of certain nonpecuniary interests regarding questions of recusal, as opposed to substantial pecuniary interests. This means that the Supreme Court is quite strict when it says that only the most extreme cases regarding the due process clause merit disqualification. The present case is not one of those.

## V.  CONCLUSION

For the reasons stated above, we find that in the case at bar there are no excep-

10. We recognize that plaintiff argued at the hearing that Negrón Soto was biased against NPP members even as a judge, but no evidence was presented to support this argument except

tional circumstances creating a threat of great and immediate irreparable injury to plaintiff such that we should intervene by way of either injunctive or declaratory relief in the pending state proceedings. *See Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). Accordingly, we hereby grant defendants' motion filed on January 21, 1987 (docket No. 61) and abstain from entertaining this case. Therefore, the complaint is hereby dismissed. Judgment shall be entered accordingly.

IT IS SO ORDERED.

the unsubstantiated hearsay brought out in the testimony of plaintiff's witness, Romero Barceló.