**UNITED STATES of America, Appellee,**

v.

**Rafael CORSINO, Defendant, Appellant.**

**No. 86–1239.**

United States Court of Appeals, First Circuit.

Argued Oct. 9, 1986.

Decided Feb. 25, 1987.

---

Antonio Bauza Torres, for appellant.

Ricardo R. Pesquera, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Appellant Corsino was convicted after a jury trial in the district court on charges of having aided and abetted in the making of a false statement in violation of 18 U.S.C. § 1001 (1982). His co-defendant, Jose Diaz, was acquitted.

### I.

Based on the evidence presented, the jury could reasonably have found the following:

During 1979 and 1980 the municipality of Juncos, Puerto Rico, received a Community Development Grant for $235,000 from the United States Department of Housing and Urban Development ("HUD") to provide materials to rehabilitate homes in two of its barrios, Cantagallos and Las Pinas. Sometime after HUD disbursed the funds to Juncos, HUD sought to audit the program but could obtain no information as to how the money had been spent. HUD requested the municipality to submit data detailing its use of the money, or, if this was not possible, to return the funds to HUD. The municipality did not respond. Three HUD officials, including Rafael Isern, Director of the Planning and Community Development Division, then visited Juncos and met with the mayor and other officials of the city, including co-defendant Diaz, who was working for the city as its director of federal programs. At that meeting, the city officials showed Isern some bulky case files, and Isern requested the mayor to provide him with "a list of each case, in-cluding the amount spent in each case, with the purpose of determining whether those files amounted to the sum indicated."

After this meeting, on instructions from Diaz, a subordinate, Maria Luisa Rijos, prepared a list of the purported beneficiaries of the aid and the amount of aid they allegedly received. Diaz then sent some of his employees out to obtain the signatures of those listed. Diaz told his employees,

That these were some persons who had benefited from the H.U.D. program, and it was a requirement in order to send it over to the H.U.D. program, and we had to go out to the field and collect some signatures.

The employees went out but were unable to obtain signatures from all the persons who appeared on the list. They returned and told Diaz what had happened. Diaz then directed several of the employees themselves to sign on the list the names of different persons that had been typed thereon, and the employees did so, varying their handwriting so as to make it appear that the same person had not signed each time. Diaz also signed some names himself. The individuals whose names were signed did not authorize the signatures.

Appellant, co-defendant Rafael Corsino, who was a sub-director of the Public Works Department, himself signed a number of names on the list and caused other employees of the municipality of Juncos whom he supervised to sign the names of persons on the list, in all instances without authorization of the persons whose names were signed. Two employees testified that they feared reprisals from Corsino if they did not sign. As one of them put it:

Well, if one did not do what Mr. Corsino would order one to do, well, he would have you suspended from the job.

The list bearing the unauthorized, purported signatures was eventually turned over to HUD with a cover letter signed by the mayor of Juncos. Thereafter, HUD conducted its own house-to-house investigation of a number of the persons listed to determine whether the $235,000 had in fact been used for rehabilitation purposes. The agency concluded that the funds had, in

fact, been properly spent, *i.e.*, for construction materials, the purposes for which they had been granted.

Diaz and Corsino were indicted by a federal grand jury, as aiders and abetters, for violating 18 U.S.C. § 1001:[1]

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The jury found Diaz not guilty and Corsino guilty. Corsino appeals, claiming essentially six errors.

## II.

 Corsino argues that it was not proven that he intended to deceive HUD. *See United States v. Markey,* 693 F.2d 594, 596 (6th Cir.1982) (" 'intent to deceive' is an essential element of the crime described in section 1001").

> The elements of an offense under § 1001 are the making (a) "in any matter within the jurisdiction of any department or agency of the United States," of (b) a false statement of (c) material fact with (d) fraudulent intent.

*United States v. Race,* 632 F.2d 1114, 1116 (4th Cir.1980). *See also United States v. Lichenstein,* 610 F.2d 1272, 1276 (5th Cir. 1980); *United States v. Notarantonio,* 758 F.2d 777, 785 (1st Cir.1985). To show he lacked fraudulent intent, appellant cites to testimony of some of the signing employees that they thought there was no intention to deceive HUD and they heard de-

fendants comment to that respect. Corsino points out that the funds were in fact properly expended and that, therefore, he would have had no reason to want to deceive HUD as to the use of the funds.

In *United States v. Lichenstein,* the Fifth Circuit observed,

> The statement must have been made with an intent to deceive, a design to induce belief in the falsity or to mislead, but § 1001 does not require an intent to defraud, that is, the intent to deprive someone of something by means of deceit.

610 F.2d at 1276–77.

Earlier the Fifth Circuit said in *United States v. Godwin,* 566 F.2d 975, 976 (5th Cir.1978),

> Intent to deceive and intent to defraud are not synonymous. Deceive is to cause to believe the false or to mislead. Defraud is to deprive of some right, interest or property by deceit. Since the purpose of 18 U.S.C. § 1001 is to protect the government against those who would cheat or mislead it in the administration of its programs, a charge that includes specific intent to deceive along with the other elements mentioned above comports with 18 U.S.C. § 1001.

False statements intended to manipulate and pervert agency functioning come within section 1001. *United States v. Lichenstein,* 610 F.2d at 1278.

While the entire business of the fake signatures seems like sheer foolishness, we think the record supports a finding of deceptive intent sufficient to convict under 18 U.S.C. § 1001. The signatures added apparent verisimilitude to the sums listed as having been paid: the jury could infer an intent to mislead HUD into believing that each beneficiary had been approached and had personally verified receipt of the listed aid. Motivating this deception would be a desire to forestall further insistence by

---

1. They were charged in the indictment that for the purpose of inducing the United States Department of Housing and Urban Development to abstain from disallowing the approximate amount of $235,700.00 from the Municipality of Juncos, Commonwealth of Puerto Rico, [they] did submit a sixteen (16) page list to said agency wherein they did falsify, conceal and coverup material facts about the true recipients of labor and construction materials provided by H.U.D. under a Community Development Grant to rehabilitate properties in the Cantagallos and Las Pinas sectors of Juncos, Commonwealth of Puerto Rico.

HUD that the municipality pay back the grant.[2]

There was evidence not only that Corsino directed his subordinates to sign the alleged beneficiaries' names but that he told them the reason for doing this was that the list had to be submitted to HUD and there was not enough time to go house to house to obtain the signatures. That the employees' signatures were intended to look to HUD like actual signatures appears from the fact that they were written in a column headed "signature" and that Corsino induced *different* subordinates to sign, varying their handwriting so as not to have it appear that several signatures were by the same hand.

While many of the listed people whose purported signatures were inserted without their authority had indeed received aid, there was evidence that at least two had not. The parties stipulated that, if called, Carmen M. Rodriguez Morales and Margarita Santana would testify that they applied for aid to rehabilitate their house through the Community Development Grant but never received the aid. They would also say their names appeared on the lists submitted to HUD by the municipality of Juncos with signatures which were not their own and that they never authorized anyone to sign on their behalf.

The above supports a finding that Corsino deliberately used deceptive means to satisfy HUD that everything was fully accounted for, to forestall an attempt by HUD to force the municipality of Juncos to return the funds. This reflects an intent to cheat or mislead the government in the administration of its programs such as section 1001 proscribes. *United States v. Godwin,* 566 F.2d at 976; *United States v. Lichenstein,* 610 F.2d at 1278.

### III.

Counsel for Corsino contends that the false signatures were not material. He points out that they had no actual effect on HUD's actions, and that there is no evidence HUD had ever requested that the signatures of those benefiting from the various home improvements be submitted to it.

"Materiality of the alleged misstatements is an essential element of offenses defined by 18 U.S.C. § 1001." *United States v. Radetsky,* 535 F.2d 556, 571 (10th Cir.1976). "While materiality is not an explicit requirement of the second, false statements, clause of § 1001, courts have inferred a judge-made limitation of materiality in order to exclude trifles from its coverage." *United States v. Lichenstein,* 610 F.2d at 1278. *See also United States v. Ven-Fuel, Inc.,* 602 F.2d 747, 752 (5th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). The Fifth Circuit has said,

> The charge of materiality requires only that the fraud in question have a natural tendency to influence, or be capable of affecting or influencing, a governmental function. The alleged concealment or misrepresentation need not have influenced the actions of the Government agency, and the Government agents need not have been actually deceived.

*United States v. Markham,* 537 F.2d 187, 196 (5th Cir.1976) (citations omitted). *See also United States v. Johnson,* 530 F.2d 52, 54 (5th Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976); *United States v. Di Fonzo,* 603 F.2d 1260, 1266 (7th Cir.1979); *United States v. Carrier,* 654 F.2d 559, 561 (9th Cir.1981); *United States v. Diaz,* 690 F.2d 1352, 1357 (11th Cir.1982); *United States v. Fern,* 696 F.2d 1269, 1273 (11th Cir.1983); *United States v. Richmond,* 700 F.2d 1183, 1188 (8th Cir. 1983); *United States v. Ramos,* 725 F.2d 1322, 1324 (11th Cir.1984); *United States v. Salinas-Ceron,* 731 F.2d 1375, 1377 (9th Cir.1984); *United States v. Brown,* 742 F.2d 363, 367 (7th Cir.1984); *United States v. Green,* 745 F.2d 1205, 1208 (9th Cir. 1984); *United States v. Brack,* 747 F.2d 1142, 1150 (7th Cir.1984), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1193, 84 L.Ed.2d 339

---

**2.** There was evidence that the program's paperwork had been mismanaged in the past; it could be inferred that if HUD insisted upon return of the funds, this might impact adversely on the careers and even the jobs of employees associated with the program.

(1985); *United States v. Chandler*, 752 F.2d 1148, 1151 (6th Cir.1985); *United States v. Swaim*, 757 F.2d 1530, 1534 (5th Cir.1985).

The jury could find, as we have said, that the purpose of sending the signatures to HUD was to make that agency believe that those people had actually verified receipt of the benefits. In this way HUD would approve the list and not request the municipality to reimburse the funds. The jury could infer that appellant expected that HUD would rely on the list, including the signatures, to make its determination of whether or not to accept the municipality's explanation for the use of the funds. Regardless of whether the list, with signatures, actually affected or influenced HUD's functions, it was "capable" of affecting or influencing them. If a statement could have provoked agency action, it is material whether or not ever relied on. *United States v. McIntosh*, 655 F.2d 80, 83 (5th Cir.1981); *United States v. Richmond*, 700 F.2d 1183, 1188 (8th Cir.1983); *United States v. Dick*, 744 F.2d 546, 553 (7th Cir. 1984); *United States v. Norris*, 749 F.2d 1116, 1121 (4th Cir.1984); *United States v. Notarantonio*, 758 F.2d 777, 785 (1st Cir. 1985). Statements may be material even if ignored and never read by the agency. *United States v. McIntosh*, 655 F.2d at 83; *United States v. Diaz*, 690 F.2d 1352, 1358 (11th Cir.1982).[3]

Appellant argues that the signatures cannot be material because their production was not required by the agency. Even, however, if agency regulations or the request by Mr. Isern did not specifically require that they be filed with the agency, the signatures were material. Section 1001 "prohibits false statements generally and not just those required by law or regulation." *United States v. Diaz*, 690 F.2d at 1358. "That a statement was not required

to be made to the agency does not make the statement any less material." *United States v. Dick*, 744 F.2d at 553.

The signatures were obtained to accompany a list required by HUD as a result of its investigation of the use of the funds in Juncos. The evidence introduced at trial was clear that through the signatures appellant intended to influence the ongoing investigation by demonstrating that the funds had been properly used, thus forestalling any requirement that the municipality return the funds. A statement may be material where it is made "in the hope of influencing the pending investigation." *United States v. May*, 625 F.2d 186, 194 (8th Cir.1980); *United States v. Cowden*, 677 F.2d 417, 419 (5th Cir.1982). *See also United States v. Notarantonio*, 758 F.2d at 787.

### IV.

Appellant argues that the district court erred by failing to give instructions on a lesser included offense, that is, violation of 18 U.S.C. § 1010 (1982), which carries a maximum sentence of two years and/or a fine of not more than $5,000:

Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Department of Housing and Urban Development for insurance, or the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Department, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Department, makes, passes, utters, or publishes, any statement, knowing the same to be false, or alters, forg-

---

3. Appellant argues the court should not have instructed the jury that the statements charged in the indictments, *i.e.*, the false signatures, were material, but should have submitted the materiality issue to the jury for it to decide. He cites *United States v. Valdez*, 594 F.2d 725, 729 (9th Cir.1979), where it was said that "since it is an essential element, materiality, as with all of

the other elements of the offense charged, must be determined by the jury." All the other circuits that have addressed this issue have decided that materiality is a matter of law for the judge to decide. *See United States v. Abadi*, 706 F.2d 178, 180 (6th Cir.1983), and the cases cited therein. We hold that the court correctly ruled on the issue of materiality.

es, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

Appellant never requested that this instruction be given to the jury nor did he object to the instruction given. He argues that because the attorney representing him at trial never requested this instruction, he was deprived of adequate legal representation. We do not reach this issue because we hold that appellant was not entitled to the instruction.

A violation of section 1010 is not a lesser included offense of section 1001 merely because it carries a lesser sentence.

In *United States v. Brown*, 482 F.2d 1359 (9th Cir.1973), defendant was convicted under section 1001 and argued that the indictment should have been brought under either section 1010 or section 1012. The court said:

> Assuming, as defendant argues, that this conduct constitutes a violation of either § 1010 or § 1012, we find no indication in the legislative history that Congress, by creating a specific H.U.D. false claim statute, intended to disallow use of the more general false statement statute, § 1001, with its harsher penalties.
>
> This case thus falls under the general rule that where a single act violates more than one statute, the government may elect to prosecute under either.

482 F.2d at 1360. (citations omitted).

"A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *Sansone v. United States*, 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965). There is no element of a violation under section 1001 that is not also found in a violation of section 1010. Compare our previous discussion on the elements of the crime under section 1001 to the discussion

in the following cases of the elements of the crime under section 1010: *United States v. Leach*, 427 F.2d 1107, 1111 (1st Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970); *Henninger v. United States*, 350 F.2d 849 (10th Cir.1965), *cert. denied*, 382 U.S. 979, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966); *United States v. Pesano*, 293 F.2d 229 (2d Cir.1961). As section 1010 is not a lesser offense as compared to section 1001, but merely another statute under which the same conduct prohibited by the latter section can be punished, the district court did not err in not giving the lesser offense instruction. Indeed, had it done so it would have erred, because defendants were not charged in the indictment with violating section 1010.

### V.

Since co-defendant Diaz was acquitted, Corsino argues that the district court erred in accepting inconsistent verdicts on essentially the same evidence. The evidence as to Diaz was indeed very similar. One can only speculate as to why he was acquitted whereas Corsino was convicted. It is conceivable that jurors thought the less of Corsino because two subordinates implied that he pressured them into signing. Diaz also presented evidence of having told some HUD officials that the signatures were not to be regarded as real. It is, in any event, a jury's prerogative to return inconsistent verdicts and to acquit out of leniency. *United States v. Martorano*, 557 F.2d 1, 9 (1st Cir.1977), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978). *See also United States v. Crooks*, 766 F.2d 7, 10 (1st Cir. 1985) ("courts do not hold juries to a standard of strict logical consistency when they convict one co-conspirator while acquitting codefendants.").

Corsino also argues that, since defendants were charged in the indictment with aiding and abetting each other, that implied a conspiracy, and that a conviction of a co-conspirator will not be sustained if the rest of the co-conspirators are acquitted.

The indictment, however, did not charge a conspiracy. We disagree with Corsino's premise that one charged with aiding and abetting is inferentially also charged with conspiracy:

> The cases are clear that one may cause another to commit a crime, 18 U.S.C. § 2(b), or aid and abet the commission of a crime, 18 U.S.C. § 2(a), without being a conspirator with the principal offender. There need be no agreement, express or tacit, between the principal offender and the aider and abettor, and indeed the principal offender need not even be aware that he was aided and abetted by another.

*United States v. Krogstad*, 576 F.2d 22, 29 (3d Cir.1978) (citations omitted).

## VI.

 Corsino contends the court erred in substituting a juror on the second day of trial because she did not show up, without making an inquiry as to why the woman was not present. This argument is frivolous.

The decision to substitute an alternate juror is committed to the sound discretion of the trial court. *United States v. Cameron*, 464 F.2d 333, 335 (3d Cir.1972); *United States v. Jones*, 534 F.2d 1344, 1346 (9th Cir.1976); *United States v. Smith*, 550 F.2d 277, 285 (5th Cir.1977); *United States v. Rodriguez*, 573 F.2d 330, 332 (5th Cir. 1978). A "trial court's exercise of this discretion is not to be disturbed absent a showing of bias or prejudice to the defendant." *United States v. Smith*, 550 F.2d at 285. Here the judge replaced the juror with an alternate when she had not shown up in court by the time the trial was scheduled to resume. Besides her mere failure to appear, there were related circumstances supporting the judge's stated concerns about the juror's ability and willingness to attend court at the times necessary to perform her duties. The court did not abuse its discretion.

## VII.

Finally, appellant argues that the district court erred when it denied his motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. A Rule 29 motion turns on whether "the evidence is insufficient to sustain a conviction" of the offense. We are satisfied that there was enough evidence, as a matter of law, for the jury to have returned a guilty verdict.

*The judgment of conviction is affirmed.*