UNITED STATES of America, Appellee,

v.

Philip G. ARCADIPANE, Defendant,
Appellant.

No. 94–1342.

United States Court of Appeals,
First Circuit.

Heard Nov. 10, 1994.

Decided Nov. 23, 1994.

Willie J. Davis, with whom Davis, Robinson & White, Boston, MA, was on brief, for appellant.

Robert E. Richardson, Asst. U.S. Atty., with whom Donald K. Stern, U.S. Atty., Boston, MA, was on brief, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

SELYA, Circuit Judge.

Defendant-appellant Philip G. Arcadipane appeals his conviction on multiple counts of mail fraud and making false statements. In the last analysis, the plethora of arguments that he advances, though ably presented, signify nothing of consequence. Accordingly, we affirm.

## I. BACKGROUND

In April of 1988, while working for the United States Postal Service, appellant suffered a job-related psychiatric disability. He eventually filed a claim for benefits with the Office of Workers' Compensation Programs (OWCP) of the United States Department of Labor (DOL). He received his first disability check in February of 1989, retired from the Postal Service eight months later, and continued to receive disability payments thereafter.

Prior to the onset of his disability, appellant had been repairing firearms and reloading shell casings as a for-profit sideline. In connection with its initial processing of the disability claim, OWCP wrote to him in June of 1988 requesting information about extracurricular employment activities. After consulting with counsel, appellant explained that his sideline business had been reorganized and that he was no longer gainfully employed in it.[1] OWCP did not press the point at that time.

In 1990, 1991, and 1992, OWCP requested appellant, in conjunction with his ongoing receipt of compensation benefits, to complete Form 1032. This is a standardized form designed to obtain historical information re-

---

1. Appellant informed OWCP that his wife now owned the business; that it was not operating profitably; and that, when he assisted her at all, he did so without remuneration.

garding benefit recipients' income from sources such as employment and self-employment. OWCP uses the data to compute benefit levels.

On September 7, 1990, after again consulting with counsel, appellant submitted a completed Form 1032 to OWCP. He made similar submissions on September 7, 1991, and August 20, 1992.[2] Each time he stated that he "had not been employed for the previous twelve months," and that he "had been unemployed during the previous fifteen months."

In 1992, DOL launched an investigation of appellant's business activities. In May, an agent posing as a purchasing officer for an out-of-state police department contacted appellant and, after some negotiations, ordered 20,000 rounds of ammunition. The "purchaser" arranged to pick up the order at appellant's home. Upon his arrival, however, he whipped out a search warrant instead of a requisition, combed the premises, and seized various incriminating business records (including income tax returns).

Soon thereafter, a federal grand jury returned a 31–count indictment against appellant. Twenty-eight counts charged mail fraud in violation of 18 U.S.C. § .1341 (1988), on the theory that appellant had wrongfully obtained money through the mails (specifically, 28 monthly disability checks) by "falsely [claiming] that [he] was not employed and that [he] was unemployed." The remaining three counts charged appellant with making false statements (one for each Form 1032 that he submitted to OWCP) to the effect that he was "unemployed".

A jury convicted appellant on all counts, and OWCP suspended benefit payments. This appeal ensued.

**2.** Each form, by its terms, covered "the 12 months prior to the date of [the benefit recipient's] completion and signature."

**3.** The false statement statute provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or

## II. ANALYSIS

Appellant has advanced several asseverations in support of his appeal. We deal with them *seriatim.*

### A. *OWCP's Authority.*

Appellant maintains that his convictions under the false statement statute cannot stand.[3] He constructs the following syllogism: (1) inasmuch as he was totally disabled during the time frame covered by the indictment, his situation is controlled by 5 U.S.C. § 8105(a) (which provides in relevant part that, when an employee's "disability is total, the United States shall pay the employee during the disability monthly monetary compensation"), (2) section 8105 does not specifically authorize DOL to prod benefit recipients to report earnings from employment and self-employment;[4] and, therefore, (3) the government had no authority to request the information that it now asserts appellant falsely supplied. He adds, moreover, that because 5 U.S.C. § 8105 did not authorize the solicitation of earnings information, he had no way of knowing that section 1001 applied to Form 1032, and thus did not receive fair warning that inscribing false statements on the form could subject him to a federal criminal prosecution. We do not find either facet of this argument persuasive.

1. *Lack of Authority.* It seems self-evident that section 1001 is intended to promote the smooth functioning of government agencies and the expeditious processing of the government's business by ensuring that those who deal with the government furnish information on which the government confidently may rely. To this end, section

document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be [punished as provided].
18 U.S.C. § 1001 (1988).

**4.** Appellant contrasts section 8105 with a sister statute which specifically provides that:

The Secretary of Labor may require a partially disabled employee to report his earnings from employment or self-employment, by affidavit or otherwise, in the manner and at the times the Secretary specifies. . . .

5 U.S.C. § 8106(b) (1988).

1001 *in and of itself* constitutes a blanket proscription against the making of false statements to federal agencies. Thus, while section 1001 prohibits falsification in connection with documents that persons are required by law to file with agencies of the federal government, *see, e.g., United States v. Dale,* 991 F.2d 819, 828–29 (D.C.Cir.) (involving a fraudulent application for a Department of Defense security clearance), *cert. denied,* —— U.S. ——, ——, 114 S.Ct. 286, 650, 126 L.Ed.2d 236 (1993), its prohibitory sweep is not limited to such documents. The statute equally forbids falsification of any other statement, whether or not legally required, made to a federal agency. *See United States v. Meuli,* 8 F.3d 1481, 1485 (10th Cir.1993) (explaining that section 1001 "prohibits false statements whether or not another law requires the information be provided"), *cert. denied,* —— U.S. ——, 114 S.Ct. 1403, 128 L.Ed.2d 76 (1994); *United States v. Kappes,* 936 F.2d 227, 231 (6th Cir.1991) (explaining that section 1001 itself provides "clear statutory authority to justify holding [persons] to the reporting requirement"); *United States v. Olson,* 751 F.2d 1126, 1127 (9th Cir.1985) (per curiam) (holding that section 1001's prohibition of false statements is not restricted to those that are submitted pursuant to some (other) specific statutory requirement); *see also United States v. Corsino,* 812 F.2d 26, 31 (1st Cir.1987) (holding *sub silentio* to same effect).

▮▮▮ Applying this rationale to the case at hand, we conclude that the "lack of authority" issue is a red herring. Under section 1001, the government does not need to show that it had some particular extrinsic authority to request the information falsely provided by the defendant. Consequently, whether DOL or OWCP had the specific statutory authority to seek employment and self-employment data from appellant is irrelevant to the validity of the convictions under review.

**2. Fair Warning.** The second prong of appellant's assignment of error posits that, because the benefits he received under 5 U.S.C. § 8105 were not conditioned by statute upon his truthful completion of Form 1032, he did not receive fair warning that inscribing false statements on that form would expose him to criminal charges. Appellant's protest lacks force.

▮▮▮ To be sure, the Due Process Clause forbids the government from depriving an individual of his liberty by reason of specified conduct unless he is given fair warning of the consequences of that conduct. *See Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977); *United States v. Gallo,* 20 F.3d 7, 12 (1st Cir.1994). Fair warning thus requires that a criminal statute be sufficiently definite to apprise a person of ordinary intelligence that his anticipated behavior will transgress the law. *See United States v. Barker Steel Co.,* 985 F.2d 1123, 1129 (1st Cir.1993). Fair warning, however, does not mean that the first bite is free, nor does the doctrine demand an explicit or personalized warning. Although a prospective defendant is entitled to notice of what behavior will be deemed to infract the criminal code, the fair warning doctrine neither excuses professed ignorance of the law nor encourages deliberate blindness to the obvious consequences of one's actions. *See Gallo,* 20 F.3d at 12.

▮▮▮ In this instance, appellant had ample warning because section 1001 is clear on its face. The Court held as much in *United States v. Yermian,* 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984), a case in which the defendant made false statements on a form provided by his employer. The employer, unbeknownst to the defendant, later forwarded the form to the Department of Defense. In affirming the defendant's conviction, the Court held that section 1001 "unambiguously dispenses with any requirement that the Government also prove that [the false] statements were made with actual knowledge of federal agency jurisdiction." *Id.* at 69, 104 S.Ct. at 2940 (citations omitted). Under *Yermian,* the plain language of section 1001 constitutes a constitutionally sufficient warning.

We think that the instant case is even stronger than *Yermian.* Here, appellant knew that Form 1032 originated with a government agency. He had every reason to believe that the continued receipt of government funds—his disability benefits—depend-

ed, at least in part, on his responses. Form 1032 itself placed appellant on notice, through a warning conspicuously printed on the front page of the form, that he must make honest answers to the questions, regardless of who would later read the completed document. In short, appellant's claim that he was not adequately forewarned rings surpassingly hollow.

## B. *Variance.*

The indictment charged, *inter alia*, that appellant falsely stated on Form 1032 that he was "unemployed." Appellant complains that the prosecutor told the jury that it could convict not only if it found appellant to have been "employed," but also if it found appellant to have been "self-employed." In appellant's view, this is a fatal variance between the indictment and the proof at trial. We think that the reports of the indictment's demise are greatly exaggerated.

■ Appellant's contention suffers from two vices. First, he did not raise it in the district court—appellant did not object to the introduction of evidence regarding his self-employment, and never presented the alleged discrepancy between the charge and the evidence to the trial judge by motion or otherwise—and he has, therefore, waived the point. *See, e.g., United States v. Slade,* 980 F.2d 27, 31 (1st Cir.1992) (holding that "a party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court"); *United States v. Figueroa,* 818 F.2d 1020, 1025 (1st Cir.1987) (similar).

■ In addition to being procedurally defaulted, appellant's contention is substantively wanting. A variance occurs when the proof at trial portrays a scenario that differs materially from the scenario limned in the indictment. *See United States v. Vavlitis,* 9 F.3d 206, 210 (1st Cir.1993); *United States v. Moran,* 984 F.2d 1299, 1304 (1st Cir.1993). A variance requires reversal of a conviction only if it is both material and prejudicial, for example, if the variance works a substantial interference with the defendant's right to be informed of the charges laid at his doorstep. *See Vavlitis,* 9 F.3d at 210; *United States v. Sutherland,* 929 F.2d 765, 772 (1st Cir.), *cert.*

*denied,* —— U.S. ——, 112 S.Ct. 83, 116 L.Ed.2d 56 (1991). We afford plenary review to the question of whether an asserted variance requires retrial. *See United States v. Cardall,* 885 F.2d 656, 670 (10th Cir.1989); *see also* 2 Steven A. Childress & Martha S. Davis, *Federal Standards of Review* § 11.32, at 125 (1992).

■ We see no cognizable prejudice here. When, as now, an indictment gives a defendant particular notice of the events charged, and the proof at trial centers on those events, minor differences in the details of the facts charged, as contrasted to those proved, are unlikely to be either material or prejudicial. *See, e.g., United States v. Morrow,* 39 F.3d 1228, 1235 (1st Cir.1994). So it is here: self-employment is merely one form of employment, and a person who is either employed or self-employed could not be said in any meaningful sense to be "unemployed." Whatever slight difference may exist between employment and self-employment cannot support the weight of the claimed variance.

We are fortified in this conclusion because the record makes transpicuously clear that appellant at all times understood his statements about *both* employment and self-employment to be at issue. For example, the government, in its opening discourse, told the jury the evidence would show that appellant "stated that he was not employed or self-employed...." Appellant did not object to this assertion. He likewise did not object during the trial as the government placed into evidence his statements regarding self-employment. Appellant's persistent failure to object belies his afterthought claim that he was misled. So does defense counsel's opening statement, in which he advised the jury:

> The gist of the charge is the fact that he is accused of filing on Form 1032 a statement that he was not employed and not self-employed. *The government says that he was self-employed, and that the answers that he filed, indicating that he was not, deceived the government.* [Emphasis supplied.]

By like token, both attorneys discussed self-employment in their summations.

■ To reverse a conviction on the basis of a variance we must find that the variance caused a defendant to be misinformed of the charges against him or otherwise affected his substantial rights. *See Vavlitis*, 9 F.3d at 210; *United States v. Fisher*, 3 F.3d 456, 462 (1st Cir.1993); *Moran*, 984 F.2d at 1304; *Sutherland*, 929 F.2d at 772. Appellant's claim of variance does not come close to meeting this criterion.

### C. *Materiality.*

■ In order to sustain a conviction under 18 U.S.C. § 1001, the government is required to prove not only that the defendant's statements were false, but also that they were material. *See Corsino*, 812 F.2d at 30; *United States v. Notarantonio*, 758 F.2d 777, 785 (1st Cir.1985); *cf. United States v. Scivola*, 766 F.2d 37, 44 (1st Cir. 1985) (holding to like effect in prosecution for perjury). The district court decided the question of materiality rather than asking the jury to decide it. Appellant fulminates that the court erred in following this protocol, and suggests that determinations of materiality should be consigned to the jury's exclusive province. He is incorrect.

■ Materiality in a "false statement" case is a question of law to be determined by the court. *See, e.g., United States v. Daily*, 921 F.2d 994, 1004–06 (10th Cir.), *cert. denied,* ── U.S. ──, 112 S.Ct. 405, 116 L.Ed.2d 354 (1991); *United States v. Bullock*, 857 F.2d 367, 370–71 (7th Cir.1988); *United States v. Hansen*, 772 F.2d 940, 950 (D.C.Cir.1985), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986); *United States v. Bryant*, 770 F.2d 1283, 1290 (5th Cir.1985), *cert. denied,* 475 U.S. 1030, 106 S.Ct. 1235, 89 L.Ed.2d 343 (1986); *United States v. Greber*, 760 F.2d 68, 73 (3d Cir.), *cert. denied,* 474 U.S. 988, 106 S.Ct. 396, 88 L.Ed.2d 348 (1985); *United States v. Norris*, 749 F.2d 1116, 1121 (4th Cir.1984), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 496 (1985); *United States v. Elkin*, 731 F.2d 1005, 1009 (2d Cir.), *cert. denied,* 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984); *United States v. Abadi*, 706 F.2d 178, 180 (6th Cir.), *cert. denied,* 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983); *United States v. Richmond*, 700 F.2d 1183, 1188 (8th Cir. 1983). We have heretofore adopted this view, *see Corsino*, 812 F.2d at 31 n. 3; *see also United States v. Nazzaro*, 889 F.2d 1158, 1166 (1st Cir.1989) (stating in perjury prosecution "that the materiality of perjurious testimony is within the exclusive domain of the court, not the jury"), and continue to believe that it is correct. We recognize that one circuit has maintained a different stance. *See United States v. Gaudin*, 28 F.3d 943, 943–44 (9th Cir.1994) (en banc) (adhering to *United States v. Valdez*, 594 F.2d 725, 728–29 (9th Cir.1979)), *cert. granted in part,* ── U.S. ──, 115 S.Ct. 713, ── L.Ed.2d ── (1995) (No. 94–514), *cert. denied,* ── U.S. ──, 115 S.Ct. 745, ── L.Ed.2d ── (No. 94–6571) (1995). With respect, we consider the Ninth Circuit cases to be wrongly decided and, as have so many of our sister circuits, we decline to follow them. We conclude, therefore, that the trial court did not err in withholding the question of materiality from the jury.

■ Appellant's fallback position is that his false statements did not surpass the materiality threshold. However, the test for materiality is not stringent:

> [M]ateriality requires only that the fraud in question have a natural tendency to influence, or be capable of affecting or influencing, a governmental function. The alleged concealment or misrepresentation need not have influenced the actions of the Government agency, and the Government agents need not have been actually deceived.

*Corsino*, 812 F.2d at 30 (quoting *United States v. Markham*, 537 F.2d 187, 196 (5th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977)); *see also Notarantonio*, 758 F.2d at 787; *cf. Scivola*, 766 F.2d at 44 (articulating equivalent test in perjury case). Here, the false statements easily qualify as material.

Statements made on Form 1032 have a natural tendency to affect benefit levels. An OWCP claims examiner testified at trial that any reported "changes in [recipients'] employment activity ... would change their en-

titlement to the amount of compensation that they [had] been receiving." Based on this testimony alone, the district court did not err in finding appellant's false statements to be material.

### D. *The Jury Instructions.*

Appellant assigns error to the lower court's charge in two respects. First, he maintains that the court blundered when it refused to give his requested "good faith" instructions. Second, he complains that the court strayed beyond the pale in discussing the function of appellate courts vis-a-vis jury verdicts. Neither thesis withstands scrutiny.

**1. *Good Faith.*** Appellant suggested two "good faith" instructions at the close of trial.[5] The judge refused to adopt these suggestions verbatim. Appellant now asserts that the judge's failure to instruct the jury in accordance with the precise language that appellant recommended constituted reversible error. We think not.

■ It is a settled rule that "jury instructions are to be evaluated in the context of the charge as a whole, and a defendant has no absolute right to the use of particular language." *United States v. Dockray,* 943 F.2d 152, 154 (1st Cir.1991); *accord Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973); *United States v. Nivica,* 887 F.2d 1110, 1124 (1st Cir.1989), *cert. denied,* 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990). The language that the district court actually used in its charge—especially certain language that we have set forth in the margin [6]—was more than adequate to protect appellant's rights. The charge explicitly mentioned both good faith and appellant's reliance on counsel in the course of submitting the forms. Moreover, other parts of the court's instructions unambiguously put the jury on notice that the government had to prove beyond a rea-

sonable doubt that appellant knew the statements were false when made, and that he intended to defraud DOL by his answers. No more was exigible. *See Dockray* 943 F.2d at 155; *Nivica,* 887 F.2d at 1124–25; *see also New England Enters., Inc. v. United States,* 400 F.2d 58, 71 (1st Cir.1968) (holding that a forthright instruction on specific intent is ordinarily a sufficient response to a defendant's request for a good faith instruction), *cert. denied,* 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581 (1969).

■ In sum, a defendant who has fully preserved his rights is entitled to a charge that fairly apprises the jury of the elements of the offense, the presumption of innocence, the burden and quantum of proof, and such theories of defense as may be supported by the evidence. He is not entitled to the nuances of phrasing that he finds most soothing.

**2. *The Court's Comment.*** Appellant's final assignment of error concerns a portion of the charge in which the court said:

You are the judges of the facts, and I will leave to you entirely the judgment of the facts. I ask you to leave to me entirely the judgment as to the law.

You should also understand that if I am in error, there is a higher court that can and cheerfully will reverse me. However, there is no higher court that will review your judgment of facts. You are the only, the final judges of the facts in this case.

Appellant argues that this commentary lessened the government's burden of proof by easing the jury's sense of responsibility. Being told explicitly that appellate review is available by a court that is prepared "cheerfully" to set aside the verdict, appellant reasons, makes jurors less responsible, ergo, more prone to convict, bolstered by the knowledge that if the defendant is innocent

---

**5.** One proposed instruction dealt with generic good faith in completing the forms. The second referred specifically to appellant's good faith reliance on the advice of counsel.

**6.** The court framed the key question for the jury in the following way:

Did [the defendant] in good faith deny that he was employed or self-employed or has the

government proven that he knew that the answer to the question was false and that he intended to defraud the Department of Labor? In this connection, the court also told the jury that "the defendant has offered evidence that he acted on the advice of a lawyer when he told the government that he was not employed."

the jury's mistake likely will be repaired by a panel of appellate judges.

 Instructing a criminal jury about the appellate process is a fairly prevalent practice among trial judges. Nonetheless, such instructions are usually unnecessary, and we counsel against them unless there is some special reason to give such instructions in a particular case. *See, e.g., United States v. Greenberg,* 445 F.2d 1158, 1162 (2d Cir. 1971) ("It might have been better procedure not to have told the jury ... '[not] to worry' because this court would reverse if there were error."); *Commonwealth v. Burke,* 376 Mass. 539, 382 N.E.2d 192, 195 (1978) ("[I]n the absence of special circumstances, the judge should not refer to the appellate process."). Be that as it may, reversal does not follow automatically merely because a trial judge succumbs to a bad idea. Thus, instructions anent the appellate process do not ordinarily constitute error as long as they are accurate. *See, e.g., United States v. Ferra,* 900 F.2d 1057, 1060 (7th Cir.1990) ("Truth usually promotes the operation of the judicial system. Jurors need not be left to wonder about the allocation of tasks between trial and appellate courts."), *cert. denied,* — U.S. —, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992); *see also United States v. Miceli,* 446 F.2d 256, 259–60 (1st Cir.1971) (finding no error in an instruction that "merely indicated to the jury that it had no responsibility as to questions of law").

 Challenges to instructions regarding the function of appellate courts should be treated like other challenges to the charge: the court of appeals must examine the charge as a whole to determine if the judge balanced the instructions, correctly informed the jurors of the governing law, imbued the jurors with an appropriate sense of responsibility, and avoided undue prejudice. In this case, surveying the charge in its entirety persuades us that the challenged comments were unlikely either to have confused the jurors or to have camouflaged the solemnity of their task. Indeed, the judge's instruction may well have impelled the jury to consider its determination of facts more, rather than less, cautiously; after all, the judge's remarks about the finality of the jury's factfinding function probably overstated the law.[7] *See, e.g., United States v. Loder,* 23 F.3d 586, 592–93 (1st Cir.1994) (reversing jury verdict on grounds of evidentiary insufficiency). Therefore, the challenged instruction did not "dilute the [jury's] sense of responsibility but rather focus[ed] jurors on their true responsibilities." *Ferra,* 900 F.2d at 1061.

## III. CONCLUSION

We need go no further. Appellant's asseverational array lacks merit. For aught that appears, appellant was fairly tried and lawfully convicted. The judgment below, must, therefore, be

***Affirmed.***

---

7. This is not a case like *United States v. Fiorito,* 300 F.2d 424 (7th Cir.1962), in which the trial judge diminished the jurors' role and diluted their collective sense of responsibility by assuring them that, if they forgot something, "that's part of the game.... That's why we have a court of appeals...." *Id.* at 426. To the contrary, the court's instruction here had precisely the opposite import.