USCA1 Opinion

 

 November 29, 1995 [NOT FOR PUBLICATION]  UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-1714 UNITED STATES OF AMERICA, Appellee, v. FREDERIC W. BERTHOFF, Defendant, Appellant.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________  ____________________ Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________  ____________________ Michael C. Andrews, with whom Brian J. McMenimen was on brief for __________________ __________________ appellant.  William C. Brown, Attorney, Appellate Division, Department of _________________ Justice, with whom Donald K. Stern, United States Attorney, was on ________________ brief for appellee. CYR, Circuit Judge. Along with five associates, CYR, Circuit Judge. ______________ appellant Frederic W. Berthoff was indicted on seventeen felony charges. Following a jury trial, he was convicted of conspiring to possess marijuana and hashish with intent to distribute, 21 U.S.C. 841, 846 (Count 1), possessing hashish with intent to distribute, id. 841 (Count 2), and money laundering, 18 U.S.C. ___ 1956(a) (Counts 7-14). We affirm the district court judgment. I I BACKGROUND1 BACKGROUND __________ On several occasions between 1984 and 1986, Berthoff enlisted Brad Welch, Stephen Marble and Albert Mello to transport marijuana and its proceeds from Florida and Arizona to Massachu- setts. Berthoff himself went along on at least one trip. In addition, between 1984 and 1991 Berthoff sold large quantities of marijuana to or through Welch, Mello, Thomas Cimeno, and Wes Schifone.   During the 1986-87 period, Berthoff expanded the scope of his illegal drug operation by arranging to finance and import 4,000 pounds of hashish from Portugal for distribution in the _______ United States. Some of the hashish was stored at Berthoff's Massachusetts residence. It was sold both within Massachusetts and elsewhere. In 1988, Scott Holland, a coconspirator in the hashish importation, was arrested on unrelated criminal charges.  ____________________ 1We relate the evidence in the light most favorable to the verdicts. United States v. Tuesta-Toro, 29 F.3d 771, 773 (1st _____________ ___________ Cir. 1994), cert. denied, 115 S. Ct. 947 (1995).  _____ ______ 2 Shortly thereafter, Berthoff reassured another coconspirator, Cimeno, that Holland would not inform on them because Berthoff was selling Holland's share of the hashish, and holding the proceeds for Holland.  In November 1988, Berthoff and Mello traveled to Zurich, Switzerland, where they opened a bank account and depos- ited $90,000 in drug proceeds. Upon his return to Massachusetts, Berthoff wrote the Swiss bank and authorized a $75,000 withdrawal and wire transfer to Mello in Massachusetts. After Mello re- ceived the transfer, he drove to Key West, Florida, and deposited the proceeds in a bank account previously established for the purpose. The funds eventually were transferred by Mello into a corporate bank account controlled by Berthoff. On another occasion, Berthoff made a $100,000 interest-free loan from illegal drug proceeds to Cimeno, insisting that Cimeno repay the loan with checks identifying the payments as returns on a real estate investment. II II DISCUSSION DISCUSSION __________ A. Count 1 A. Count 1 _______ Count I charged Berthoff and five codefendants with conspiring to possess and distribute marijuana and hashish between 1984 and 1991. Berthoff contends that the government improperly charged a single ongoing drug-distribution conspiracy which encompassed all the alleged marijuana and hashish transac- tions, and that it did so because all but the 1987 hashish- ___ ___ 3 related conduct would have been time-barred had separate conspir- acies been charged. Thus, he asserts, a single conspiracy was ______ alleged in order to fortify the government's weak case against Berthoff relating to the hashish by enabling otherwise inadmissi- ble "prior bad acts" evidence (i.e., pre-1988 marijuana-related ________ _________________ conduct) to be introduced at trial. See Fed. R. Evid. 404(b). _______ ___ Finally, as Berthoff sees it, the government's evidence rational- ly could support only an inference that he had engaged in a series of isolated buy-sell arrangements (viz., multiple conspir- ______ acies), see United States v. Townsend, 924 F.2d 1385, 1394 (7th ___ _____________ ________ Cir. 1991), and thus the evidence worked a material variance from the single conspiracy charged in the indictment.  The existence, vel non, of a single conspiracy is an ___ ___ issue of fact. See United States v. Oreto, 37 F.3d 739, 747 (1st ___ _____________ _____ Cir. 1994), cert. denied, 115 S. Ct. 1161 (1995). Thus, an _____ ______ appellant is faced with "a `heavy burden' to show the evidence precludes the findings made by the jury." Id. (citation omit- ___ ted). Viewing the evidence and all fair inferences therefrom in the light most favorable to the government, a guilty verdict will not be disturbed unless no rational jury could have found that each element of the offense was established beyond a reasonable doubt. See United States v. Tuesta Toro, 29 F.3d 771, 776 (1st ___ _____________ ____________ Cir. 1994), cert. denied, 115 S. Ct. 947 (1995).  _____ ______ We find that the variance claim fails because the government adduced sufficient evidence at trial to enable a rational inference that there was a single conspiracy, as alleged 4 in the indictment. See, e.g., United States v. Bello-Perez, 977 ___ ____ _____________ ___________ F.2d 664, 667-68 (1st Cir. 1992) ("pursuant to their tacit or express agreement, [the conspirators] knowingly and intentionally 'directed their efforts towards the accomplishment of a common goal or overall plan' to commit the substantive offense charged in the indictment.") (citation omitted). The overarching goal of Berthoff's constantly expanding operation was drug trafficking, whether in marijuana or hashish. The government established that there was a significant overlap in the timing of the marijuana and hashish operations, as well as consistent methods of operat- ing, participants, and locations. See, e.g., United States v. ___ ____ ______________ David, 940 F.2d 722, 734 (1st Cir. 1991) (outlining factors _____ distinguishing single conspiracies from multiple conspiracies), cert. denied, 504 U.S. 955 (1992). For example, though Berthoff _____ ______ maintains that he "hired" Welch, Marble, and Mello to make only one-time trips from Florida to Massachusetts prior to 1986, with ________ no contemporaneous expectation or plan to "hire" them for subse- quent jobs, the jury could have found otherwise based on Mello's testimony alone. Mello testified, in pertinent part: "Q. [defense counsel]: You did that trip [to Florida], you got paid, and that was a closed chapter as far as that trip was concerned, right? . . . So you had no idea whether or not you would be asked to make another trip a month later, did you? A. [Mello]: I had a pretty good idea I'd be asked." We conclude that there was no variance.  Berthoff next contends that the district court should 5 have instructed the jury that it could not convict unless it found a single conspiracy. Since Berthoff asserted no contempo- raneous objection, see Fed. R. Crim. P. 30, we review only for ___ plain error. See United States v. Olano, 113 S. Ct. 1770, 1776- ___ _____________ _____ 77 (1993) ("plain error" is error that is both "obvious" and "seriously affects the fairness, integrity or public reputation of the judicial proceedings"). There was no error, plain or otherwise. A refusal to give a particular jury instruction cannot be challenged successfully on appeal if the charge given by the court substantially covered the requested matter. See ___ United States v. Boylan, 898 F.2d 230, 244 (1st Cir.), cert. ______________ ______ _____ denied, 498 U.S. 849 (1990). Here, the district court gave an ______ adequate instruction.2  B. Count 2 B. Count 2 _______ Count 2 charged that Berthoff possessed hashish, with intent to distribute. The jury was misinstructed that "you may not convict any of these people of this charge unless the infer- ence that you draw convinces you beyond a reasonable doubt that the person accused intended to distribute the marijuana or ___ _________ __ hashish or cause its distribution." Although the district court,  ____________________ 2The final charge informed the jury as follows: "Now, where persons join together to further one common unlawful design or purpose, a single conspiracy exists. By way of contrast, multi- ple conspiracies exist when there are separate unlawful agree- ments to achieve distinct purposes. Proof of several separate and independent conspiracies is not proof of a single overall conspiracy charged in the indictment unless, of course, one of the separate conspiracies proved happens to be the single con- spiracy described in the indictment." See Oreto, 37 F.3d at 747. ___ _____ 6 on five other occasions in its final charge, correctly instructed on the evidentiary showing required to convict under Count 2 (viz., that conviction could not be based on Berthoff's post-1987 possession of marijuana only), Berthoff contends that this _________ ____ inadvertence constituted a constructive amendment of the indict- ment. See, e.g., United States v. Vavlitis, 9 F.3d 206, 210 (1st ___ ____ _____________ ________ Cir. 1993). Since there was no contemporaneous objection, we review for plain error. Olano, 113 S. Ct. at 1776.3  _____ Evaluating the jury instructions as a whole, see ___ Boylan, 898 F.2d at 244, we find no "possibility that the convic- ______ tion [on Count 2] rest[ed] upon an offense not charged." United ______ States v. Dunn, 758 F.2d 30, 36 (1st Cir. 1985). As the trial ______ ____ court instructed the jury, the only evidence that Berthoff's ____ ________ codefendant Scott Holland may have been connected to the conspir- acy charged in Count 1 was Berthoff's admission to Cimeno, in __ 1988, that he was holding Holland's share of the hashish and that ____ he would sell it and hold the proceeds for Holland's benefit.4 4  ____________________ 3Berthoff incorrectly claims on appeal that the verdict form exacerbated this instructional error. Quite the contrary, the verdict form indicated that Count 2 charged "possession of marijuana and hashish." The conjunctive phrasing could only _________ ___ heighten the government's burden of proof. See, e.g., United ________ ___ ____ ______ States v. Cantrell, 999 F.2d 1290, 1292 (8th Cir. 1993), cert. ______ ________ _____ denied, 114 S. Ct. 885 (1994). In all events, since the indict- ______ ment went to the jury room during deliberations, and the district court correctly instructed with respect to Count 2 on five other occasions, we discern no plain error.  4Berthoff argues that it was error to deny his motion to strike the testimony of three alleged coconspirators (Mello, Cimeno and Schifone) who testified against Berthoff at trial in return for a government promise to recommend a "substantial assistance" departure. See U.S.S.G. 5K1.1. We find no error. ___ See United States v. Dailey, 759 F.2d 192, 196 (1st Cir. 1985) ___ _____________ ______ 7 Thus, the jury could not have convicted Holland on Count 1, as it did, unless it found that Berthoff had made a truthful statement to Cimeno in 1988 that Berthoff then possessed, and was then distributing, Holland's share of the hashish, see supra p. 3, the ___ _____ identical predicate finding needed for Berthoff's conviction on Count 2.  C. Counts 7-14 C. Counts 7-14 ___________ Count 7 charged that "[o]n or about February 10, 1989,"5 Berthoff laundered drug proceeds "in Massachusetts and in the Southern District of Florida" by transferring the Swiss bank funds to Florida. Berthoff argues that the government failed to adduce sufficient evidence to establish proper venue in Massachusetts. See United States v. Georgacarakos, 988 F.2d 1289, ___ _____________ _____________ 1293 (1st Cir. 1993) (government must prove venue by preponder- ance of evidence). We do not agree.   ____________________ (noting that where an accomplice testifies pursuant to a plea agreement, "the 'established safeguards' are that the jury be informed of the exact nature of the agreement, that defense counsel be permitted to cross-examine the accomplice about the agreement, and that the jury be specifically instructed to weigh the accomplice's testimony with care"); see also United States v. ___ ____ _____________ Rullan-Rivera, 60 F.3d 16, 19 (1st Cir. 1995).  _____________ 5Berthoff also argues that the Swiss bank funds transfer arrived in Massachusetts in December 1988, so that the reference in the indictment that the offense occurred "[o]n or about February 10, 1989" was fatally misleading. We have not required "strict chronological specificity or accuracy" when "a particular date is not a substantive element of the crime charged." United States v. Morris, 700 F.2d 427, 429 (1st Cir.), _____________ ______ cert. denied, 461 U.S. 947 (1983). Having been charged with _____ ______ laundering funds from Switzerland, through Massachusetts and on to Florida, Berthoff was in no sense "misinformed of the charges against him," nor did the reference to an approximate time frame "otherwise affect[] his substantial rights." United States v. ______________ Arcadipane, 41 F.3d 1, 7 (1st Cir. 1994).  __________ 8 Normally, venue is proper in any district wherein a criminal offense was committed. See Fed. R. Crim. P. 18. Fur- ___ ther, "[e]xcept as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in __ ___ ________ which such offense was begun, continued, or completed." 18 _________ U.S.C. 3237(a) (emphasis added); see Georgacarakos, 988 F.2d at ___ _____________ 1293. The statute further provides that "[a]ny offense involving the use of mails, transportation in interstate or foreign com- merce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly __________ _______ provided by enactment of Congress, may be inquired of and prose- cuted in any district from, through, or into which such commerce, __ ___ ________ _______ mail matter, or imported object or person moves." 18 U.S.C.  3237(a) (emphasis added). Thus, the actual transfer of the funds from Switzerland to Mello's Massachusetts residence plainly enabled the jury to find proper venue in Massachusetts.  Finally, the remaining money laundering charges  Counts 8-14 involved Berthoff's 1988 interest-free "loan" to Cimeno. Berthoff contends that Cimeno's loan repayments were not competent evidence of money laundering because Cimeno testified that he used the loan proceeds to purchase land and construct a duplex, and that he repaid Berthoff from the "legitimate" pro- ceeds realized from the subsequent sale of the duplex, rather than from "proceeds of unlawful activity." This claim is frivo- 9 lous. The jury supportably found that Berthoff arranged the so- called Cimeno "loan" for the purpose of filtering the illegal drug proceeds and altering their form so as to appear "legiti- mate." See United States v. Isabel, 945 F.2d 1193, 1200-03 (1st ___ _____________ ______ Cir. 1991). This finding in no sense entailed a determination that either the loan to Cimeno, or the acquisition and sale of the duplex, transformed the illegal drug proceeds previously deposited in the Swiss bank into proceeds from legitimate activi- ties.  Affirmed. Affirmed. ________ 10