# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 29, 2021

Lyle W. Cayce
Clerk

No. 19-51178

United States of America,

*Plaintiff—Appellee*,

*versus*

Daniel Winslow Cline,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:19-CR-1018-1

Before Jones, Smith, and Elrod, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Daniel Cline challenges his conviction and sentence for violating the Violence Against Women Act ("VAWA"). His arguments center on challenges to his conviction for violating two separate protection orders by transporting his girlfriend across state lines in violation of both. After careful review of the record, we AFFIRM.

## I. Background

Cline was subject to two domestic violence protection orders issued by Colorado state courts within one month and involving the same person,

No. 19-51178

G.H. In Arapahoe County, the first order was issued after Cline was charged with various violent crimes against G.H.[1] The other was imposed in Douglas County after Cline violated the first order. Both were "mandatory" protection orders under state law that were not requested by G.H. COLO. REV. STAT. § 18-1-1001(1). The orders prohibited Cline from harassing, contacting, or communicating directly or indirectly with G.H.

Notwithstanding the two orders, G.H. contacted Cline "to come help [her]" after she was kicked out of her parents' house. Shortly thereafter, Cline and G.H. embarked on a road trip with the apparent intent of traveling to Mexico or Costa Rica. When the two entered Texas, G.H. messaged a friend, told her where they were, and explained that Cline planned to take G.H. to Mexico. The friend told G.H.'s father, who contacted law enforcement. The pair was stopped at the Sierra Blanca border patrol checkpoint, where agents had been told to look for a vehicle like the one Cline was driving for a welfare check or a possible kidnapping. Border patrol agents began a welfare check and, upon seeing G.H. with a bruised eye and crying, they arrested Cline.[2]

A grand jury indicted Cline on two counts under VAWA, one each for interstate travel while subject to the Arapahoe County and the Douglas County restraining orders. *See* 18 U.S.C. § 2262(a)(1). Cline unsuccessfully moved to dismiss the indictment. After the government presented its case, Cline moved for acquittal, and the district court denied his motion. The jury found Cline guilty on both counts. Arguing that the counts were

---

[1] The order issued after Cline was charged with false imprisonment, strangulation, harassment involving a "strike/shove/kick," assault of a pregnant victim, and a violent crime with the use of a weapon.

[2] G.H. was taken to the hospital where it was determined that she had been hit in the face and suffered a fractured facial bone and concussion.

No. 19-51178

multiplicitous, Cline then moved to require the government to elect a count of conviction for sentencing. The district court denied the motion.

Relevant to this appeal, the presentence report ("PSR") recommended a two-level enhancement because Cline knew that G.H. was pregnant with his child and a vulnerable victim. In total, the PSR recommended a guidelines range of 92 to 115 months in prison. The district court sentenced Cline at the bottom of the guidelines range for a total of 92 months. Cline timely appealed.

## II. DISCUSSION

Cline argues that the district court erred by denying his motions to dismiss the indictment, grant acquittal as a matter of law, and require the government to elect a count of conviction. He also challenges the vulnerable victim enhancement to his offense level. We examine each point in turn.

### A. Motion to Dismiss Indictment

Cline argues that his motion to dismiss the indictment should have been granted because the protection orders entered against him do not fall within VAWA's definition of protection order. VAWA, he contends, requires that any such order must have been "issued in response to a complaint, petition, or motion filed by or on behalf of a person seeking protection," 18 U.S.C. § 2266(5)(A), but both Colorado protection orders were mandatory and issued pursuant to state statute without the victim's request. COLO. REV. STAT. § 18-1-1001(3).

This court reviews *de novo* issues of statutory interpretation and the denial of a motion to dismiss. *United States v. Arrieta*, 862 F.3d 512, 514 (5th Cir. 2017). VAWA creates a criminal offense for a "person who travels in interstate or foreign commerce" with intent to violate certain portions of a "protection order" that protect against "violence, threats, or harassment

against, contact or communication with, or physical proximity to, another person." 18 U.S.C. § 2262(a)(1). The statute defines a protection order to include:

> any injunction, restraining order, *or any other order* issued by a civil or criminal court for the purpose of preventing violent or threatening acts or harassment against, sexual violence, or contact or communication with or physical proximity to, another person, *including any temporary or final order* issued by a civil or criminal court whether obtained by filing an independent action or as a pendente lite order in another proceeding so long as any civil or criminal order was issued in response to a complaint, petition, or motion filed *by or on behalf of a person seeking protection* . . . .

18 U.S.C. § 2266(5)(A) (emphasis added).

Cline's argument fails under a straightforward reading of the statutory text. First, the word "including" is "usually a term of enlargement, and not of limitation," that is not "one of all-embracing definition, but connotes simply an illustrative application of the general principle." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 527 (5th Cir. 2005) (quotation marks and citations omitted) (distinguishing between the words "include" and "comprise"). Thus, the language following the word "including" in this statute is best read as illustrating some of the "other order[s]" that fall within the definition of protection order and should not be read as limiting the entire definition of protection order. Second, consistent with the nearest-reasonable-referent canon, the limiting phrase "filed by or on behalf of a person seeking protection" applies to the category of "any temporary or final order" set out immediately prior to the limiting clause. *See* ANTONIN SCALIA & BRYAN GARNER, READING LAW 152-53, 432 (2012) (describing the canon and explaining that "in modern practice, and despite the misnomer, it is common to refer to the *last-antecedent canon* when what is actually meant is the *nearest-*

*reasonable-referent canon*" (emphasis in original)). At most, the limitation would apply to the clause preceding the illustrative category, which defines a protection order as including "any other order" that meets certain characteristics. Thus, it does not limit the earlier clauses that include "any injunction [or] restraining order" as a protection order under the statute. A mandatory protection order is a restraining order, which ends the analysis.[3] We conclude that the definition of protection order in VAWA encompasses the two orders at issue in this case.

B. Motion for Judgment of Acquittal

Cline asserts that the district court erred in denying his motion for a judgment of acquittal for two reasons. First, the Colorado mandatory protection orders do not meet the federal statutory definition of a protection order, a contention we have just rejected. Second, his contact with G.H. in Colorado violated the intent of the protection orders such that there was no evidence demonstrating any further intent to violate the orders by crossing state lines.

This court reviews a district court's denial of a motion for acquittal *de novo*. *United States v. Boyd*, 773 F.3d 637, 644 (5th Cir. 2014). We consider "whether, viewing the evidence in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense charged

---

[3] Two additional reasons support this conclusion. First, both VAWA and the Colorado statute use the exact same term—"protection order"—to describe their intended scope. COLO. REV. STAT. § 18-1-1001; 18 U.S.C. § 2262. Second, Colorado's description of its mandatory protection order regime comports perfectly with VAWA's use of the term "restraining order." As the relevant Colorado statute explains, the mandatory protection order "*shall restrain* the person charged," and the statute permits the trial court to enter "further orders" against the defendant, including one that requires him "*to refrain* from contact or direct or indirect communication with the alleged victim or witness." COLO. REV. STAT. § 18-1-1001(1), (3) (emphasis added).

beyond a reasonable doubt." *Id.* (citations omitted). Cline's second argument fails because a rational jury could have found the elements of the offense charged beyond a reasonable doubt.

To prove each violation of 18 U.S.C. § 2262(a)(1), the government needed to adduce evidence that Cline (1) was subject to a protection order, (2) traveled in interstate commerce with the intent to engage in conduct violative of a statutorily delineated portion of that order, and (3) subsequently engaged in said conduct. At trial, the government presented evidence that each of the protection orders had issued, that they were in effect when Cline and G.H. were stopped in Texas after traveling in interstate commerce, and that Cline violated the orders. These facts, on their face, confirm that a rational jury could have found the elements of each offense charged beyond a reasonable doubt.

Cline disagrees, arguing that VAWA was "intended to address situations where an abuser specifically intends to circumvent the prohibitions of one state's order by acting outside that state." He contends that "the prosecution did not present any evidence that [he] had the specific intent to further violate the orders when he crossed state lines with [G.H.]."

But Cline provides no support for this interpretation of VAWA, and even so, the facts demonstrate that Cline violated the plain meaning of 18 U.S.C. § 2262(a)(1). The record establishes that Cline and G.H. traveled through New Mexico and Texas together in violation of the orders. Moreover, G.H. testified that Cline indicated that he intended to travel across state lines and into Mexico or Costa Rica with her. From this information, the jury could reasonably infer that Cline had the intent to violate the protection orders by traveling to different states, and that he subsequently did so.

C. Motion to Elect Count of Conviction

Cline argues that the two counts against him are multiplicitous and, thus, violate the Double Jeopardy clause because his alleged conduct (1) involved the same victim, (2) was a "continuous course," and (3) is addressed by Colorado's "singular intent to preclude contact" between Cline and the victim. On this basis, Cline contends the district court erred in denying his motion to elect a single count of conviction.

This court reviews alleged multiplicity *de novo*. *United States v. Planck*, 493 F.3d 501, 503 (5th Cir. 2007). The rule against multiplicity, which derives from the Double Jeopardy Clause of the Fifth Amendment, "prohibits the [g]overnment from charging a single offense in several counts and is intended to prevent multiple punishments for the same act." *United States v. Kimbrough*, 69 F.3d 723, 729 (5th Cir. 1995). Convictions are multiplicitous where the defendant is found guilty of a single offense in more than one count. *United States v. Buchanan*, 485 F.3d 274, 278 (5th Cir. 2007). Both parties recognized at oral argument that this case raises a novel question: whether violating multiple protection orders in a single, continuous course of conduct results in multiple offenses under VAWA.

To determine whether a specific course of conduct constitutes one or more crimes, the analysis focuses on the plain meaning of the statutory text.[4]

---

[4] Because this analysis is statute-specific, different statutes yield a variety of results. For example, in the child pornography context, this court has held that the government must show separate receipts under the receipt/distribution statute, but only possession at a given place and time under the possession statute. *See, e.g.*, *Planck*, 493 F.3d at 504–05 (making this distinction). This court has also distinguished the bank fraud statute—where several acts were considered part of a single overarching scheme—from a statute prohibiting improper participation in bank transactions that was intended to "punish receipt of improper benefit from individual transactions." *United States v. Brechtel*, 997 F.2d 1108, 1112 (5th Cir. 1993). When statutes prohibiting certain mailings are involved, each mailing has been deemed a separate offense even when they arose from the

*Kimbrough*, 69 F.3d at 730 ("We must defer to the legislature's determination of whether a specific course of conduct constitutes one or more separate crimes."); *accord United States v. Keys*, 747 F. App'x 198, 205 (5th Cir. 2018) ("At bottom, the multiplicity inquiry is a question of statutory construction—whether Congress intended to permit cumulative punishment for one instance or pattern of conduct."); *see* 1A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 143 (5th ed. 2020) (noting that the answer should "be ascertained from all the usual tools of statutory construction"). This requires determining the proper unit of prosecution.[5] *See United States v. Reedy*, 304 F.3d 358, 365–66 (5th Cir. 2002) (applying the unit of prosecution analysis to a child pornography statute). The relevant VAWA provision states:

> A person who travels in interstate or foreign commerce, . . . *with the intent to engage in conduct that violates the portion of a protection order that* prohibits or provides protection against violence, threats, or harassment against, *contact or communication with, or physical proximity to, another person* or the pet, service animal, emotional support animal, or horse of that person, *or that would violate such a portion of a protection order in the jurisdiction in which the order was issued*, and subsequently engages in such conduct, shall be punished as provided in subsection (b).

18 U.S.C. § 2262(a)(1) (emphasis added).

---

same transaction. *See, e.g.*, *United States v. Gallardo*, 915 F.2d 149, 151 (5th Cir. 1990) (analogizing the statute prohibiting the mailing of child pornography with the mail fraud statute, concluding that mailing four separate letters constituted four separate violations even though three of the envelopes were mailed at the same time).

[5] As the Eighth Circuit succinctly framed it: "When the same statutory violation is charged twice, the question is whether Congress intended the facts underlying each count to make up a separate unit of prosecution." *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005).

No. 19-51178

Three aspects of the statutory text demonstrate that Cline's violation of each protection order, albeit arguably through one continuous course of conduct,[6] gave rise to two separate offenses. First, and most obviously, the statute twice refers to "a" protection order in the singular when describing the offense. Second, the statute specifies that an offense occurs when a person engages in conduct that violates a particular "portion" of a protection order. The emphasis on individualized content confirms that the statute did not create an offense covering protection orders in a general sense, but rather created an offense that arises from the violation of a particular order. Third, the text explicitly references an order "in the jurisdiction in which the order was issued." Thus, the statute treats protection orders arising in *different* jurisdictions distinctly. It is easy to conclude that a single protection order constitutes the proper unit of prosecution.

The two protection orders here are also materially distinct. First, they were issued in two different jurisdictions on two different dates. Because they were issued in different jurisdictions, the statutory text itself indicates that the two orders could be treated differently. *Id.* (encompassing conduct "that would violate such a portion of a protection order in the jurisdiction in which the order was issued"). Second, the two orders arose under different circumstances and were based on different predicate charges. Specifically, the first protection order issued after law enforcement charged Cline with various crimes against G.H., while the second order was based on a later charge that Cline violated the first order. In short, because Cline violated two

---

[6] The government does not seriously dispute that Cline's conduct was continuous, and it instead contends only that a "continuous course of conduct, by itself, is insufficient to render multiple convictions invalid," while observing that "aggregating all incidents between March 4 and March 9, 2018 minimizes [Cline's] conduct."

distinct protection orders he was properly indicted and convicted on two counts pursuant to the plain text of 18 U.S.C. § 2262(a)(1).

Cline's arguments to the contrary are unavailing. He contends that the counts are multiplicitous because they "relate to a violation of the same statute for an act united in time, circumstance, and impulse." But he cites no authorities for the proposition that an act involving a continuous course of conduct can never violate the same statute in two different ways. In fact, there are cases to the contrary. *See United States v. Conlan*, 786 F.3d 380, 387 (5th Cir. 2015) (rejecting a similar argument in a stalking case involving two victims because the "plain language" of the statute "unambiguously" focused the unit of prosecution on the "targeted individual"); *United States v. Dixon*, 273 F.3d 636, 642 (5th Cir. 2001) (concluding a single multi-victim robbery could include separate counts under the relevant statutory unit of prosecution).

Additionally, Cline argues that the congressional intent behind VAWA supports his conclusion that the counts are multiplicitous. But we need not grapple with whether the legislative history affects our analysis in this case because, as Cline concedes, "there is very little in the legislative history of VAWA regarding the interstate violation of protection orders." Instead, we stick with the text. In any event, the preceding textual analysis is consistent with the legislative intent that Cline himself highlights: the federal government was trying to fill gaps between state-specific protection orders by "making protective court orders issued in one State valid in the 49 others." S. Rep. No. 101-545, at 40 (1990).

D. Vulnerable Victim Enhancement

Cline argues that the district court erred by enhancing his guidelines offense level because G.H. was a vulnerable victim. The guidelines authorize a two-level increase to a defendant's base offense level "[i]f the defendant

No. 19-51178

knew or should have known that a victim of the offense was a vulnerable victim." U.S. SENT'G GUIDELINES MANUAL § 3A1.1(b)(1) (U.S. SENT'G COMM'N 2018). The application notes to § 3A1.1 define a "vulnerable victim" as a person "who is a victim of the offense of conviction" and "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." § 3A1.1 cmt. n.2.

Whether a victim is unusually vulnerable is a factual finding that we review for clear error. *United States v. Jenkins*, 712 F.3d 209, 212 (5th Cir. 2013). Because vulnerability is a complex determination that is dependent on several characteristics, the district court is in the best position to make the vulnerability determination, and its decision "is entitled to due deference." *United States v. Wilcox*, 631 F.3d 740, 753–54 (5th Cir. 2011) (internal quotation marks and citation omitted). This court will find a district court clearly erred "only if, based on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *United States v. Malone*, 828 F.3d 331, 337 (5th Cir. 2016) (internal quotation marks and citation omitted).

Cline's actions, on their face, demonstrate that the district court did not clearly err. As the PSR observed, "Cline knew G.H. was the victim of the instant offenses, that G.H. was pregnant with their baby, and that G.H. was particularly susceptible to Cline's criminal conduct, which involved a history of verbal and physical abuse reflected in Cline's arrests."

Further, Cline's primary argument to the contrary has previously been rejected by this court. He argues, in short, that the upward enhancement was erroneous because he did not take advantage of G.H.'s pregnant state to facilitate violating the protection orders or otherwise "target[] [G.H.] because she was pregnant." But "there is no authority

11

requiring targeting in this circuit." *United States v. Burgos*, 137 F.3d 841, 844 (5th Cir. 1998). Cline knew that G.H. was pregnant and knew or should have known that she was susceptible to his efforts to contact her. Because it was plausible that Cline knew or should have known that G.H. was a vulnerable victim, Cline has not demonstrated that the district court clearly erred in applying the § 3A1.1 enhancement.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Cline's conviction and sentence.