# United States Court of Appeals
## For the First Circuit

No. 21-1411

UNITED STATES OF AMERICA,

Appellee,

v.

NELSON JEAN DION,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

David J. Bobrow, with whom Bedard & Bobrow, P.C. was on brief, for appellant.

Mahogane Denea Reed, Attorney, Appellate Section, Criminal Division, United States Department of Justice, with whom Darcie N. McElwee, United States Attorney, and Benjamin M. Block, Assistant United States Attorney, were on brief, for appellee.

June 16, 2022

**SELYA**, **Circuit Judge**.  Defendant-appellant Nelson Jean Dion challenges his conviction for interstate violation of a protection order under 18 U.S.C. § 2262(a)(1) — an offense created by the Violence Against Women Act of 1994 (VAWA), Pub. L. 103-322, § 40001, 108 Stat. 1796, 1902 (1994).  His appeal presents a question of first impression as to whether the no-contact and stay-away provisions in a conditional release order — requiring a defendant to refrain from contact with the victim of the alleged crime and to stay away from locations frequented by that victim — may constitute a "protection order" as defined by the VAWA.  See 18 U.S.C. § 2266(5).  We answer this question in the affirmative and uphold the district court's denial of the defendant's motion to dismiss.  And as a result, we uphold the defendant's conviction.

**I**

We briefly rehearse the relevant facts and travel of the case.  In April of 2016, local authorities arrested the defendant and charged him with felony aggravated assault under Maine law.  See Me. Rev. Stat. Ann. tit. 17-A, § 208(1)(A).  The offense involved the defendant's long-term girlfriend, T.N. (who had reported to the police that she had been physically assaulted).  Following a bail hearing, a state-court judge issued a conditional release order.  This order was issued on a standardized form, which included a no-contact provision that identified T.N. and contained marks indicating that the defendant was ordered to stay away from

- 2 -

certain locations (such as T.N.'s residence).  Although the box next to the no-contact provision was left unchecked, the executed version of the defendant's bail-bond agreement reflects that he agreed to cease communication with T.N. and stay away from the locations identified in the conditional release order throughout the period of his conditional release.

The assault charge was eventually dismissed due to T.N.'s untimely death.  Three years later, though, a federal grand jury sitting in the District of Maine returned an indictment that charged the defendant — in two counts — with interstate violation of a protection order.  See 18 U.S.C. § 2262(a)(1).  The indictment alleged that between April and June of 2016, the defendant traveled back and forth between Maine and New Hampshire, intending to have direct contact and communication with, and be in physical proximity to, T.N., in violation of a protection order.

The defendant moved to dismiss the indictment on two grounds.  See Fed. R. Crim. P. 12(b).  First, he claimed that the conditional release order was not a "protection order" as defined in 18 U.S.C. § 2266(5).  Second, he claimed that the charges against him abridged the Due Process Clause.  See U.S. Const. amend. V.

The district court rejected both claims.  See United States v. Dion, No. 19-176, 2020 WL 1450441, at *3 (D. Me. Mar. 25, 2020).  Interpreting the statutory definition of "protection

order" as "clearly encompass[ing] the bail order" based on the "plain language" of the statute, the district court jettisoned the defendant's first claim. Id. at *1-2. The court then found the defendant's constitutional claim wanting. See id. at *2-3.

The defendant subsequently entered a conditional guilty plea, see Fed. R. Crim. P. 11(a)(2), reserving the right to appeal from the denial of his motion to dismiss. The district court sentenced him to concurrent thirty-one-month terms of immurement on the charged counts. This timely appeal followed.

**II**

In this court, the defendant does not break new ground but, rather, reprises arguments that he made below. To set the stage for our consideration of those arguments, we note that Federal Rule of Criminal Procedure 12(b)(1) allows for pretrial consideration of motions that are based on "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Typically, when such a motion seeks to dismiss an indictment, its resolution will turn on pure questions of law regarding the sufficiency of the indictment's allegations. See United States v. Brissette, 919 F.3d 670, 675 (1st Cir. 2019). Sometimes, however, resolving such a motion may require addressing facts that are not alleged in the indictment. In that event, a court still may resolve a "pretrial motion to dismiss an indictment where the government does not dispute the

ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts." United States v. Musso, 914 F.3d 26, 29-30 (1st Cir. 2019) (quoting United States v. Weaver, 659 F.3d 353, 355 n* (4th Cir. 2011)).

With this preface in place, we turn to the defendant's asseverational array. Our standard of review is straightforward. As the facts necessary to resolve this appeal are undisputed, we address only questions of law, which engender de novo review. See id. at 30; United States v. Therrien, 847 F.3d 9, 14 (1st Cir. 2017).

## A

Before we grapple with the defendant's main contentions, we pause to address a subsidiary issue. The indictment charged the defendant with violating 18 U.S.C. § 2262(a)(1), which criminalizes, in relevant part, "travel[] in interstate or foreign commerce . . . with the intent to engage in conduct that violates the portion of a protection order that prohibits or provides protection against violence, threats, or harassment against, contact or communication with, or physical proximity to, another person . . . and subsequent[] engage[ment] in such conduct." Here, the defendant is alleged to have violated the no-contact and stay-away provisions (collectively, the No-Contact Order) in the conditional release order.

Maine law authorizes courts to "order the pretrial release" of a defendant "on a condition or combination of conditions." Me. Rev. Stat. Ann. tit. 15, § 1026(3). Although denominated "conditions of release," such provisions are full-fledged orders of the court: Maine law makes it a crime to "violate[] a condition of release." Id. § 1092(1). The defendant does not dispute that such conditions of release are generally binding. He does, however, suggest that the No-Contact Order imposed in his case was not in force. This suggestion is based upon what appears to be a scrivener's error: an unchecked box next to the printed no-contact provision.

We conclude that the defendant's suggestion is specious. The conditional release order indicates that it was intended to be "attached" to the bail bond, which itself contains the defendant's signed agreement to refrain from contact with T.N. Moreover, the defendant concedes in his brief that he was advised of the no-contact requirement during his bail hearing. It is, therefore, abundantly clear that the defendant was aware of the requirement and by no means prejudiced by any missing checkmark in the conditional release order. Cf. United States v. Merced-García, 24 F.4th 76, 80 (1st Cir. 2022) (finding on plain error review that defendant was not prejudiced by unsigned section of plea agreement in part because agreement itself was signed); United States v. Meléndez-Santana, 353 F.3d 93, 100 (1st Cir. 2003) (concluding

- 6 -

that conditions stated orally at sentencing control even though conditions of release in written sentencing order differ materially), overruled in part on other grounds by United States v. Padilla, 415 F.3d 211, 215 (1st Cir. 2005) (en banc). Consequently, we continue our analysis secure in the knowledge that the No-Contact Order prohibited the defendant from communicating with T.N.

**B**

The defendant's principal challenge to the indictment rests on the premise that, as a matter of law, neither the conditional release order nor any part of it is a "protection order" within the meaning of 18 U.S.C. § 2262(a)(1). This premise is flawed and, thus, the defendant's challenge fails.

The term "protection order," as used in 18 U.S.C. § 2262(a)(1), takes the meaning provided in 18 U.S.C. § 2266 (the relevant "Definitions" provision of the VAWA). The defendant's challenge requires us to train the lens of our inquiry on whether the No-Contact Order satisfies the definition supplied in section 2266. See Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or., 515 U.S. 687, 697 n.10 (1995) (explaining that, where "Congress explicitly defined the operative term," a court must focus on the statutory definition). To the extent that any aspect of the statutory definition is unclear, a court may consider the ordinary meaning of the defined term. See United States v.

- 7 -

Stevens, 559 U.S. 460, 474 (2010); see also Bond v. United States, 572 U.S. 844, 861 (2014) ("In settling on a fair reading of a statute, it is not unusual to consider the ordinary meaning of a defined term, particularly when there is dissonance between that ordinary meaning and the reach of the definition.").

Section 2266(5)'s definition of "protection order" encompasses two subsections. See 18 U.S.C. § 2266(5). The relevant subsection broadly defines a "protection order" as including

> any injunction, restraining order, or any other order issued by a civil or criminal court for the purpose of preventing violent or threatening acts or harassment against, sexual violence, or contact or communication with or physical proximity to, another person, including any temporary or final order issued by a civil or criminal court whether obtained by filing an independent action or as a pendente lite order in another proceeding so long as any civil or criminal order was issued in response to a complaint, petition, or motion filed by or on behalf of a person seeking protection[.]

Id. § 2266(5)(A). The opening clause of this subsection identifies three types of orders that may constitute "protection order[s]." Neither party suggests that the No-Contact Order fits within the description of either of the first two types. That leaves the third type.

The third type — "any other order issued by a civil or criminal court" — is obviously a catch-all. Its wording reflects

- 8 -

Congress's intent to include within the statutory sweep a wide swath of court orders that are not specifically delineated. This broadly inclusive intent is apparent from the open-ended language indicating that "any other order issued by a civil or criminal court" may, under particular circumstances, constitute a "protection order." The word "any," in particular, "has an expansive meaning," Patel v. Garland, 142 S. Ct. 1614, 1622 (2022) (quoting Babb v. Wilkie, 140 S. Ct. 1168, 1173 n.2 (2020)), that is most naturally read to modify "other order issued by a civil or criminal court," denoting such a court order of whatever kind, see Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 9-10 (2011) (reasoning that statutory phrase including term "any" "suggests a broad interpretation"); Salinas v. United States, 522 U.S. 52, 56-58 (1997) (explaining that the term "any" reflects "expansive" language). This commodious phrasing leaves no doubt that Congress did not intend to exclude particular kinds of orders simply because they were left unmentioned. See Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 80 (2002); see also United States v. Contreras-Hernandez, 628 F.3d 1169, 1172 (9th Cir. 2011) (rejecting inference that unmentioned item is excluded and explaining that "catchall language" "suggests a broader reach"). Consequently, the bare fact that the statutory definition does not specifically mention conditional release orders or no-contact orders is not dispositive.

None of this is to say that the catch-all category is unbounded. Most naturally read, the statutory definition circumscribes the catch-all category by two limitations.[1] First, a "protection order" must have been issued for one of the purposes described in the definition. See 18 U.S.C. § 2266(5)(A). Second, "any other order issued by a civil or criminal court" may be a "protection order" only "so long as" it is "issued in response to a complaint, petition, or motion filed by or on behalf of a person seeking protection." Id.

The defendant does not dispute that the No-Contact Order in this case was issued for the purpose of preventing "contact or communication with or physical proximity to" T.N. Id. Nor could he: the No-Contact Order was designed to prevent the defendant both from contacting T.N. and from being in physical proximity to places frequented by her. The defendant does contend, however, that the second limitation (the "so long as" clause) has not been

---

[1] The defendant does not contend that the catch-all category should be constrained in any relevant way by the application of the interpretive maxim ejusdem generis. That maxim teaches that when a general term follows specific terms, the general term covers only examples of the same type as the preceding specific terms. See Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 163 n.19 (2012). Although "firmly established," the maxim "is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty." Garcia v. United States, 469 U.S. 70, 74-75 (1984) (quoting Harrison v. PPG Indus., Inc., 446 U.S. 578, 588 (1980)). This interpretive canon has no bearing here, inasmuch as express textual limitations provide sufficient guidance as to what Congress intended to include in the catch-all category.

- 10 -

satisfied — a deficiency that, in his view, prohibits the inclusion of the No-Contact Order in the catch-all category.

The government demurs. It maintains that the second limitation does not narrow the catch-all category because those parts of the definition are separated by a different clause that begins with the word "including." Relying on the decision in United States v. Cline, 986 F.3d 873, 876 (5th Cir. 2021), the government submits that the "so long as" clause is best understood as modifying the orders described in the "including" clause but not the orders encompassed by the earlier clauses, like the catch-all category.

In Cline, the Fifth Circuit rejected a defendant's argument that a mandatory protection order was not a "protection order" as defined in section 2266(5). See id. at 875-76. The Cline defendant argued that because the order was issued sua sponte pursuant to a statute, it did not satisfy the conditions described in the "so long as" clause. See id. at 875. The Fifth Circuit gave this argument short shrift. It declared that the orders described after the word "including" were merely illustrative and did not limit the sweeping definition provided in the opening clause. See id. at 876. Applying the nearest-reasonable-referent canon (an interpretative canon teaching that an adverbial phrase ordinarily should apply to its nearest reasonable referent), the court noted that the nearest reasonable referents for the

conditions stated in the "so long as" clause were those orders described in the "including" clause.  <u>Id.</u>

Our reading of the definition differs somewhat from that of the <u>Cline</u> court.  We conclude that the "so long as" clause applies four-square to the catch-all category of "any other order."[2]  "So long as" is familiar language and bears the same meaning as "provided that."  That phrase introduces a condition. The Fifth Circuit's reading would render that condition without bite, as it would apply only to some examples of "other order[s]." Although the government argues that this result is permissible based on the expansive nature of the definition, we decline its invitation to adopt a construction that renders a condition nugatory.  We think that the more sensible reading — to give the conditional language effect — is to read that condition as applicable to the category of orders preceding those described in the "including" clause.  <u>See</u> <u>Brown</u> v. <u>United Airlines, Inc.</u>, 720 F.3d 60, 68 (1st Cir. 2013) ("[I]t is settled law that courts should strive to breathe life into every word and phrase in a statute.").  The appropriateness of that reading is confirmed by the language of the "so long as" clause, which refers to "any civil

_____

[2] The <u>Cline</u> court acknowledged that this reading may well be warranted, and ultimately determined that the mandatory protection order was a "restraining order."  <u>See</u> 986 F.3d at 876 ("At most, the limitation would apply to the clause preceding the illustrative category, which defines a protection order as including 'any other order' that meets certain characteristics.").

or criminal order," and mirrors the subject matter of the catch-all category.

Had Congress included a comma before the "so long as" clause, we doubt that there would be any question about the clause's proper construction.  We acknowledge that the absence of that punctuation renders the sentence somewhat awkward — but its meaning remains apparent.  And where, as here, meaning is apparent, we will not accord decretory significance to omissions in punctuation.  See Barrett v. Van Pelt, 268 U.S. 85, 91 (1925) ("Punctuation is a minor, and not a controlling element in interpretation, and courts will disregard the punctuation of a statute, or re-punctuate it, if need be, to give effect to what otherwise appears to be its purpose and true meaning." (quoting Chi., Milwaukee & St. Paul Ry. Co. v. Voelker, 129 F. 522, 527 (8th Cir. 1904))); Ewing's Lessee v. Burnet, 36 U.S. (11 Pet.) 41, 54 (1837) ("Punctuation is a most fallible standard by which to interpret a writing . . . .").  Because the clause is most naturally read as limiting the catch-all category, that is how we read it.

**C**

The question remains whether the "so long as" clause extends to the No-Contact Order.  There is more to that question than meets the eye.

- 13 -

The "so long as" clause has four distinct elements. It requires that "any civil or criminal order" be (1) "issued in response" (2) "to a complaint, petition, or motion" that is (3) "filed" (4) "by or on behalf of a person seeking protection." 18 U.S.C. § 2266(5)(A). The defendant barely develops any argument particular to this clause and (from what we can tell) he only contests the fourth element.[3] We thus accept the government's unchallenged representation that the other elements are satisfied because the No-Contact Order was issued in material part in response to a prosecutor's oral motion for no-contact and stay-away conditions. The question, then, is whether that motion was submitted "by or on behalf of a person seeking protection."

It cannot be gainsaid that T.N. was a "person seeking protection" from abuse of the kind with which the VAWA is concerned.[4] She was a victim who sought protection by complaining

---

[3] The defendant categorically contends that the "so long as" clause means "either the person being protected must seek the protection order or be seeking protection, or someone on behalf of that person has to request the Maine judiciary to order protection." He asserts, without elaboration, that a "bail order does not fit this definition," and that even if it did, "there is no evidence on this record that T.N. herself sought a no-contact provision" in the conditional release order. Fairly read, we deem the defendant's textual argument as one premised exclusively on the fourth element.

[4] The circumstances of this case do not require that we address the extent (if any) to which a "person seeking protection" encompasses protection against abuse other than abuse of the kind that the VAWA was intended to proscribe (such as, intimidation of a witness who is not a victim).

- 14 -

of abuse to the authorities. She made an allegation of physical abuse at the hands of her long-term boyfriend (the defendant), thus initiating a criminal charge of aggravated assault. That fact is self-evident and, in all events, the defendant does not challenge the government's representation.

This leaves the issue of whether the prosecutor's motion for the no-contact and stay-away conditions was made "on behalf of" T.N. The parties have divergent views on how to understand "on behalf of" as used in the "so long as" clause. The defendant suggests that a prosecutor cannot be said to have acted "on behalf of" the victim because the victim is not the prosecutor's client but, rather, the prosecutor acts for the state. The government rejoins that the prosecutor sought the No-Contact Order "on behalf of" T.N. because the no-contact and stay-away provisions were in the interest of and for the benefit of T.N.

Were we to consider the phrase "on behalf of" in isolation, it would be difficult to discern what was meant by Congress. Some sources indicate that the "traditional" usage of "on behalf of" was to signify "as the agent or representative of" and was distinct from the phrase "in behalf of," which signified "in the interest of" or "for the benefit of." See Bryan A. Garner, Garner's Modern American Usage 103 (4th ed. 2016). But Congress's use of the preposition "on" rather than "in" provides no helpful clue: "[i]n current usage, the distinction is seldom followed."

Id.; see 2 Oxford English Dictionary 73 (2d ed. 1989) (explaining that "on behalf" is used "in the sense of" "in behalf" in "recent use," referring to texts from the eighteenth and nineteenth centuries). And it is likely that such a distinction "never had a sound basis in actual usage." Behalf, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/behalf (explaining that in American English, "the distinction is frequently not observed").

Rather, at the time of the statute's enactment, as now, the prepositional phrase "on behalf of" had more than one meaning. See Webster's Third New International Dictionary of the English Language Unabridged 198 (1981) (defining both "on behalf of" and "in behalf of" as "in the interest of," "as the representative of," or "for the benefit of"). The phrase may be narrowly understood as describing an agency principle, as in, a party acting as a "representative of" a client. See id. But the phrase also may be more broadly understood as describing the purpose of some act: for example, "on behalf of" can mean either "in the interest of" or "for the benefit of." See id.; see also Madden v. Cowen & Co., 576 F.3d 957, 973 (9th Cir. 2009) (holding that "on behalf of" as used in federal securities law means "in the interest of, as a representative of, or for the benefit of"); United States v. Frazier, 53 F.3d 1105, 1112 (10th Cir. 1995) (interpreting guidelines sentencing enhancement using phrase "on behalf of," and

- 16 -

beginning with premise that "literal" meaning could be "as a representative of" or "in the interest or aid of").

The multiple meanings of "on behalf of" suggest that the statutory text may be ambiguous, leading us to question whether the rule of lenity may be in play. That rule is a principle of statutory construction that requires narrow constructions of ambiguous criminal statutes. See Kasten, 563 U.S. at 16. But it applies when a criminal statute contains a "grievous ambiguity or uncertainty," and "only if, 'after seizing everything from which aid can be derived,'" a court "can make no more than a guess as to what Congress intended." Muscarello v. United States, 524 U.S. 125, 138-39 (1998) (quoting Staples v. United States, 511 U.S. 600, 629 n.17 (1994), and United States v. Wells, 519 U.S. 482, 499 (1997)) (internal quotation marks omitted); see Ocasio v. United States, 136 S. Ct. 1423, 1434 n.8 (2016); United States v. Báez-Martínez, 950 F.3d 119, 129 (1st Cir. 2020). In other words, a "grievous ambiguity" requires more than the "simple existence of some statutory ambiguity." Muscarello, 524 U.S. at 138-39; see Shular v. United States, 140 S. Ct. 779, 787 (2020). Because any ambiguity latent in the phrase "on behalf of" is resolved by reference to the statute's text and context, we conclude that the rule of lenity has no application here.

At any rate, the defendant — on appeal — has not developed any argument that such a grievous ambiguity exists. The

only rule-of-lenity argument that the defendant makes in this court relates to supposed ambiguity arising from the No-Contact Order's unchecked box (an entirely different issue). See supra Part II(A). As to the meaning of the "on behalf of" language, any rule-of-lenity argument is therefore waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (referring to "the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); see also United States v. De la Cruz, 998 F.3d 508, 519 n.12 (1st Cir. 2021) (deeming lenity argument waived); United States v. Voisine, 778 F.3d 176, 185 n.4 (1st Cir. 2015) (same).

In all events, the rule of lenity has no application here. To verify this conclusion, we first repair to the language of the statute itself, mindful that we must consider the statutory "text, structure, history, and purpose" before the rule of lenity comes into play. Barber v. Thomas, 560 U.S. 474, 488 (2010); see Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) (explaining that the "plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole"). The statute's text and context make clear that the meaning of "on behalf of" encompasses more than an agency principle.

To start, a broader understanding of the phrase "on behalf of" is necessary to give those words significance when read in the context of the "so long as" clause. The phrase — complete with its neighboring words — is "by or on behalf of." The conjunction "or" suggests that "on behalf of" is an alternate prepositional phrase to "by." "By" is sufficiently broad to account for acts performed by legal representatives of a party. Dictionary definitions of "by" include both actions done "through the direct agency" of a party and those done "through the medium of (an indirect or subordinate agent)." See Webster's Third International, supra at 307. These meanings accord with our commonsense understanding of the term as used in connection with court filings. A motion filed "by" a party, for instance, is ordinarily understood as capturing motions filed at the direction of a party (say, by a party's lawyer). Accordingly, to give meaning and effect to the phrase "on behalf of," the phrase must mean something more than the simple memorialization of an agency principle that is already captured in the word "by." See United States v. Menasche, 348 U.S. 528, 538-39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'" (quoting Inhabitants of Montclair v. Ramsdell, 107 U.S. 147, 152 (1883))).

Next, the "so long as" clause's reference to "criminal order[s]" makes pellucid that the phrase "on behalf of" means "in

- 19 -

the interest of" or "for the benefit of."  Unlike civil protection orders — which are sought by a petitioner either by bringing an independent civil action or by motion in an ongoing civil case — "[c]riminal protection orders" are often issued "as bail conditions or as conditions of release to protect the victim during the pendency of a criminal case."  Off. on Violence Against Women, U.S. Dep't of Just., 2018 Biennial Report to Congress on the Effectiveness of Grant Programs Under the Violence Against Women Act 148 (2018), https://www.vawamei.org/wp-content/uploads/2020/07/rtc_entire_final_oct2019.pdf.   At the time of the VAWA's enactment — as now — states used no-contact and stay-away orders in criminal cases as a means of addressing the problem of domestic abuse.[5]  See Model Code on Domestic and Family Violence § 208 (Nat'l Council of Juv. & Fam. Ct. Judges 1994) ("Before releasing a person arrested for or charged with a crime involving domestic or family violence . . ., the court or agency having authority to make a decision concerning pretrial release . . . may impose conditions of release or bail on the person to protect the alleged victim," including no-contact and stay-away orders); see also Developments in the Law — Legal

_____

[5] Maine furnishes an example.  That state has instituted a civil petition process for those seeking orders of protection.  See Me. Rev. Stat. Ann. tit. 19-A, § 4005.  It has, however, also statutorily authorized courts to issue sua sponte protection orders as a condition of pretrial release in criminal cases involving crimes between family members.  See id. tit. 15, § 321.

Responses to Domestic Violence, II. Traditional Mechanisms of Response to Domestic Violence, 106 Harv. L. Rev. 1505, 1514 & n.54 (1993) (explaining that jurisdictions may use no-contact orders as a condition of bail or pretrial release); Catherine F. Klein & Leslye E. Orloff, Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law, 21 Hofstra L. Rev. 801, 1167 & n.2259 (1993) (observing that states are "increasingly placing conditions on bail and pretrial release for domestic violence perpetrators" and collecting relevant state laws). Congress must have been aware of this praxis when it legislated the VAWA as the federal response to the issue of domestic violence and must have intended that the "protection order" definition encompass no-contact and stay-away orders imposed as conditions of release or bail. See Voisine v. United States, 579 U.S. 686, 699 (2016) (inferring from state-law background against which Congress enacted federal ban on firearm ownership that Congress intended crime to encompass individuals with prior misdemeanor convictions for reckless use of force against a domestic relation).

Viewed against this backdrop, the reference to "criminal order[s]" in the "so long as" clause supplies strong evidence that "on behalf of" is not narrowly circumscribed by agency principles. Those orders are typically issued either at a prosecutor's behest or sua sponte by the court (and not at the request of a victim). See Jeannie Suk, Criminal Law Comes Home, 116 Yale L.J. 2, 16-17

- 21 -

(2006) ("In most jurisdictions today, criminal courts issue protection orders at the prosecutor's request as a condition of pretrial release after a [domestic violence] arrest."); Christine O'Connor, Domestic Violence No-Contact Orders and the Autonomy Rights of Victims, 40 B.C. L. Rev. 937, 946-47 (1999) (explaining that criminal protection orders are criminal no-contact orders that courts may issue "as part of another criminal proceeding, such as [a] bail determination, with the state acting as a party"). A narrow construction of the phrase "on behalf of" would — all things considered — be unreasonable as it would nullify Congress's apparent intent to include "criminal order[s]" in the definition's sweep. "Everything depends on context, and when read in context," Brown, 720 F.3d at 68, the phrase "on behalf of" in the "so long as" clause must mean "in the interest of" or "for the benefit of."

If more were needed — and we do not think that it is — our reading of the phrase "on behalf of" is consistent with the apparent purposes of the "so long as" clause and the "protection order" definition generally. The legislative history suggests that the "so long as" clause may well have been intended to exclude orders issued sua sponte by courts without any indication that a particular person was seeking protection. Congress, when enacting the VAWA, was skeptical of so-called "mutual protection orders," which are protection orders running against those who sought protection orders in the first place. See Catherine F. Klein,

- 22 -

*Full Faith and Credit:  Interstate Enforcement of Protection Orders Under the Violence Against Women Act of 1994*, 29 Fam. L. Q. 253, 266 (1995).  When it enacted a full faith and credit provision to require that jurisdictions enforce protection orders of other jurisdictions, Congress purposefully denied full faith and credit status to protection orders that were "issued by a court against a person who . . . filed a written pleading for protection . . . if the order was issued <u>sua sponte</u> by the court or if it was not based on specific findings that each party was entitled to an order."  H.R. Rep. 103-395, at 35-36 (1993); <u>see</u> 18 U.S.C. § 2265(c) (excluding "protection order issued . . . against one who has petitioned, filed a complaint, or otherwise filed a written pleading for protection against abuse" if "no cross or counter petition, complaint, or other written pleading was filed seeking such a protection order").  Our reading of the "so long as" clause similarly removes from the catch-all category's domain any order that does not respond to the interests of "a person seeking protection."

We add, moreover, that a broad reading of "on behalf of" is consistent with Congress's intent to afford the "protection order" definition expansive scope.  The definition's scope sets the boundaries for the reach of the VAWA's criminal provisions addressing interstate abuse using the term "protection order."  A broad definition furthers the original purpose of those

provisions, which were enacted to address domestic abusers who had theretofore escaped both the reach of state law enforcement and the jurisdiction of state court orders. See S. Rep. No. 103-138, at 61-62 (1993) (explaining domestic violence as an interstate issue that justified "requir[ing] one State to enforce the 'stay-away' order of another" and warranted imposition of federal penalties to address "abusers who cross State lines to continue abuse"); S. Rep. No. 101-545, at 39-40 (1990) (describing interstate crimes as intended to "clos[e] loopholes created by the division of criminal law responsibilities among the States"). To this end, Congress's changes to the "protection order" definition since the VAWA's enactment served only to expand its breadth. See Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. 109-162, § 106, 119 Stat. 2960, 2982 (2006) (adding, among other things, term "restraining order" and word "any" before "other order"); 151 Cong. Rec. S13,749, S13,763 (2005) (explaining in section-by-section analysis that changes were made to "clarify that courts should enforce the protection orders issued by civil and criminal courts in other jurisdictions").

It would be nothing short of quixotic to read "on behalf of" narrowly and leave unpunished (under the VAWA) violators of criminal orders sought by prosecutors to protect victims of abuse of the kind intended by Congress to come under the carapace of the VAWA, simply because the victim or her legal representative may

not specifically have requested such orders. To be sure, some orders issued sua sponte or at the request of prosecutors might be considered "restraining order[s]" and, thus, included within the "protection order" definition. See Cline, 986 F.3d at 876. But a related penalty provision for the crime of stalking under the VAWA indicates that Congress considered the terms "restraining order" and "no-contact order" to refer to distinct types of orders. See 18 U.S.C. § 2261(b)(6) (punishing whoever "commits the crime of stalking in violation of a temporary or permanent civil or criminal injunction, restraining order, no-contact order, or other order described in section 2266"). It would be implausible (indeed, senseless) for Congress to have excluded from the "protection order" definition no-contact orders issued in criminal proceedings that would not otherwise be considered "restraining order[s]," solely because they had not been requested by a victim or her attorney. We can discern no plausible reason as to why Congress would disparately apply such a limitation to exclude, for example, sua sponte no-contact orders but not sua sponte restraining orders. The interpretation of a criminal statute cannot be hung on so wobbly a hook. Cf. Caron v. United States, 524 U.S. 308, 316 (1998) ("The rule of lenity is not invoked by a grammatical possibility. It does not apply if the ambiguous reading relied on is an implausible reading of the congressional purpose.").

In this instance, all roads lead to Rome. Consistent with the various interpretive modalities explored above, we conclude that the phrase "on behalf of" in the "so long as" clause must mean "in the interest of" or "for the benefit of" a person seeking protection. With this meaning in place, the prosecutor's request for no-contact and stay-away provisions easily satisfies the requirement that such a request be made "on behalf of" a victim. We hold, therefore, that the No-Contact Order constitutes a "protection order" as defined in section 2266(5).

**D**

The defendant's contrary arguments are unconvincing. Only one warrants discussion.

The defendant dwells at great length on how certain state procedures for obtaining civil protection orders afford significant safeguards to alleged abusers. But he fails to persuade us that either the VAWA's text or any other reliable indicia of congressional intent suggest that court orders can only satisfy the statutory definition if they are accompanied by procedural trappings peculiar to civil cases. In fact, neither the elements of the crime nor the definition of "protection order" require a protection order that was issued following notice and an opportunity to be heard. Cf. United States v. Hicks, 389 F.3d 514, 535 (5th Cir. 2004) (rejecting challenge to conviction for possessing firearms while subject to restraining order premised on

validity of order because criminal statute does not "indicate[] that it applies only to persons subject to a valid, as opposed to an invalid, protective order" (emphasis omitted)); 18 U.S.C. § 922(d)(8)(A) (requiring for firearm-related charge for persons subject to restraining order that such order be "issued after a hearing of which such person received actual notice").

That ends this aspect of the matter. We conclude that the no-contact and stay-away provisions of a conditional release order may, under certain circumstances, constitute a "protection order" as defined in 18 U.S.C. § 2266(5). Those circumstances require that the order be "issued in response to a complaint, petition, or motion filed by or on behalf of a person seeking protection." See id. That compendium of circumstances, however, does not require that the person seeking protection herself seek protection directly in the form of a court order. Instead, such a person need only be found to be "seeking protection," and a court order may be sought by a prosecutor on her behalf when it aids her protection. That is plainly what transpired here. We thus conclude that the district court did not err in refusing to dismiss the indictment based on the defendant's definitional challenge.

## III

We need not linger long over the defendant's argument that the indictment should have been dismissed because his due process rights were infringed. The defendant premises this

argument on the assertion that he did not receive constitutionally appropriate notice of the potential for federal prosecution if he violated the No-Contact Order. His assertion does not withstand scrutiny.

In his reply brief, the defendant clarifies that he does not rely on statutory vagueness as a ground for his failure-of-notice claim. This means that he has foregone any argument that sections 2262(a)(1) and 2266(5) failed to give him notice because they used "terms so vague that men of common intelligence must necessarily guess at [their] meaning and differ as to [their] application." United States v. Lanier, 520 U.S. 259, 266 (1997) (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926)). He argues, instead, that he should have received actual notice of any federal penalties for violating the No-Contact Order when it was imposed.

Because — as the defendant implicitly concedes — the statute is not unconstitutionally vague, the statute itself gave constitutionally adequate notice to the defendant that crossing state lines to engage in conduct prohibited by a protection order would subject him to federal prosecution. See United States v. Jahagirdar, 466 F.3d 149, 154 (1st Cir. 2006) ("Indulging the acceptable fiction that perpetrators closely read statutes before acting, this statute gave [the defendant] ample warning that he was courting violation."). The No-Contact Order was such a

"protection order" according to the plain language of section 2266(5). See supra Parts II(B)-(C). Such "plain language," which a person of ordinary intelligence would understand to include orders like the No-Contact Order, "constitutes a constitutionally sufficient warning." United States v. Arcadipane, 41 F.3d 1, 5 (1st Cir. 1994); see Sabetti v. Dipaolo, 16 F.3d 16, 18 (1st Cir. 1994) (explaining that even criminal provisions with "run-of-the-mill statutory ambiguities" typically do not create "fair notice" violations unless the provisions criminalize conduct generally considered innocent). Fair warning requires no more. See Arcadipane, 41 F.3d at 5 ("Fair warning . . . does not mean that the first bite is free, nor does the doctrine demand an explicit or personalized warning.").

## IV

We need go no further. For the reasons elucidated above, we hold that the no-contact and stay-away provisions in a conditional release order may, under certain circumstances, satisfy the VAWA's definition of a "protection order" as set forth in section 2266(5). Because we find unfounded the defendant's claim that those circumstances are absent here, his challenge fails. We likewise conclude that his due process challenge fails. Hence, we affirm both the district court's denial of the defendant's motion to dismiss and the defendant's conviction.

**Affirmed**.